BARNES, J.,
for the Court:
¶ 1. Victor Sims was convicted of felony shoplifting and sentenced by the Jones County Circuit Court to a term of five *867 years in the custody of the Mississippi Department of Corrections (MDOC). The crime of shoplifting in this case was Sims’s third shoplifting offense. See Miss.Code Ann. § 97-28-93(6) (Rev.2006).
¶ 2. On appeal, Sims raises two issues: the trial court erred in declining to sustain his motion for a new trial based on juror misconduct, and the court erred in denying his motion for a new trial because the verdict is against the overwhelming weight of the evidence. We find no error and affirm.
FACTS
¶ 3. Sims entered Hudson’s Salvage (Hudson’s) in Laurel, Mississippi, and stole two shirts. According to the testimony of Randy Williamson, one of Hudson’s security officers on duty, he saw Sims remove two shirts from their hangers and put them down the front of his pants. Sims then wandered around the store before walking into the parking lot. Williamson followed Sims into the parking lot and identified himself as Hudson’s security officer and asked Sims to stop. Rather than stop, Sims started to run. Williamson chased Sims on foot for approximately a quarter of a mile. Williamson also said Sims ran into an alley and then went inside a small shed.
¶ 4. Rayford Taylor, another Hudson’s security officer, testified that he went to the front of the store after Williamson called him on his cell phone and told him there was a shoplifter. Taylor stated that it was Hudson’s policy that security personnel only apprehend shoplifters once they are outside the store. According to Taylor, once they were outside, Taylor and Williamson identified themselves as Hudson’s security officers and asked Sims to stop and come back inside the store. Sims started running. Taylor then notified the Laurel Police Department of the shoplifting and took chase after Sims. According to Taylor, he chased Sims on foot and pursued Sims using Taylor’s personal vehicle before Sims was finally apprehended by the police. Taylor testified that he and Williamson located the stolen merchandise underneath a board or box in the shed where Sims was found.
¶ 5. Officer Mark Brewer of the Laurel Police Department testified that he was dispatched to Hudson’s. Officer Brewer was informed that Hudson’s security officers were chasing a man who had stolen two shirts from the store. Based on the description of the shoplifter he had been provided, Officer Brewer located Sims and began chasing him and called out for him to stop. At this point, the officer chased Sims for approximately a block and a half before catching him. Officer Brewer then placed Sims under arrest for failing to obey a lawful command and for shoplifting. On cross-examination, the officer testified that he did not find any Hudson’s merchandise on Sims when he placed Sims under arrest.
¶ 6. Investigator Michael Reaves of the Laurel Police Department testified that he was called to Hudson’s on the shoplifting complaint and met with Hudson’s security officers, Williamson and Taylor. Investigator Reaves took photographs of the merchandise that had been taken from the store. According to the investigator, he found records at the police station that showed Sims had two previous shoplifting convictions.
¶ 7. Sims did not call any witnesses in his defense, and his motion for a directed verdict was overruled. Sims was subsequently found guilty of felony shoplifting and sentenced to five years of imprisonment in the custody of the MDOC.
DISCUSSION
1. Juror Misconduct
¶ 8. Sims contends that after the trial, he realized he knew one of the female *868 jurors. Sims alleges he did not recognize the juror’s name, and he had last seen her ten years ago. Sims stated in his affidavit that he had gotten into an argument with the juror approximately ten years ago and believed the juror harbored animosity toward him.
¶ 9. At the hearing on the motion for a new trial, the juror in question testified she did not know Sims or his family. The circuit court overruled Sims’s motion for a new trial.
¶ 10. On appeal, Sims argues the juror failed to disclose during voir dire that she knew him. This argument is contradicted by the juror’s testimony at the hearing on Sims’s motion for a new trial. She specifically testified she did not know Sims. The only evidence to support Sims’s claim is Sims’s affidavit, which was based in part on the information and belief of an unnamed friend. Neither Sims nor his unnamed friend testified at the hearing on the motion for a new trial.
¶ 11. The authority cited by Sims in his brief is not relevant to this case. In this case, there was no evidence of juror misconduct or a juror’s failure to answer a “relevant, direct, and unambiguous question presented by defense counsel on voir dire.” Odom v. State, 355 So.2d 1381, 1383 (Miss.1978).
¶ 12. This assignment of error is without merit.
2. The Weight of the Evidence
¶ 13. The standard of review we apply when considering the trial court’s ruling on a post-trial motion is abuse of discretion. Dilworth v. State, 909 So.2d 731, 736 (¶ 17) (Miss.2005) (citing Howell v. State, 860 So.2d 704, 764 (¶212) (Miss.2003)). “A motion for new trial challenges the weight of the evidence. A reversal is warranted only if the lower court abused its discretion in denying a motion for a new trial.” Id,, at 737 (¶ 20) (quoting Howell, 860 So.2d at 764 (¶212)). “Only in ‘exceptional cases in which the evidence preponderates heavily against the verdict’ should the trial court invade the province of the jury and grant a new trial.” Id. (quoting Amiker v. Drugs For Less, Inc., 796 So.2d 942, 947 (¶ 18) (Miss.2000)).
¶ 14. There was testimony from Williamson that he saw Sims hide two shirts in his pants. Sims left the store without paying for the shirts. Sims refused to stop for the two Hudson’s security officers and a police officer. The two shirts, which had tags from Hudson’s attached, were found in the shed where Sims had recently hidden.
¶ 15. Sims seems to be particularly concerned no security camera footage was shown at trial. Williamson testified the purpose of the security cameras was “if the store gets robbed, armed robbery.” Williamson also testified there was no security camera footage “in the area where Mr. Sims was.” Taylor also testified “there was no video of that incident.”
¶ 16. The testimony of the two security officers was more than sufficient to establish Sims’s guilt, along with the testimony of the police officer concerning Sims’s arrest. In overruling the motion for a new trial, the trial court correctly found that the jury verdict was not a “substantial miscarriage of justice.” Kelly v. State, 910 So.2d 535, 539 (¶ 12) (Miss.2005) (citing Simmons v. State, 722 So.2d 666, 674 (Miss.1998)).
¶ 17. There is no merit to this assignment of error.
¶ 18. THE JUDGMENT OF THE JONES COUNTY CIRCUIT COURT OF CONVICTION OF FELONY SHOPLIFTING AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE *869 MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF APPEAL ARE ASSESSED TO JONES COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR.