IRVING, P. J.,
for the Court:
¶ 1. On April 19, 2012, a Tunica County jury found Jose Ortando Andino guilty of felony driving under the influence (DUI) causing death. The circuit court sentenced Andino to twenty years in the custody of the Mississippi Department of Corrections. Andino filed a motion for a judgment notwithstanding the verdict (JNOV) and a motion for a new trial, both of which the court denied. Feeling aggrieved, Andino appeals and argues that the circuit court erred in failing to grant his motion for a JNOV and his motion for a new trial.
¶2. Finding that the circuit court did not err in its judgment, we affirm.
FACTS
¶3. On January 15, 2011, Andino was traveling south on Fitzgeralds Boulevard in Tunica County, Mississippi, leaving Fitzgeralds Casino. Katherine Root, her husband, and her mother, Patricia Roper, were leaving Hollywood Casino and were traveling north on Fitzgeralds Boulevard headed towards Fitzgeralds Casino. As Root drove through an intersection at which she had the green light, Andino’s vehicle struck her vehicle. Root stated that she knew Andino’s vehicle was not traveling in the same direction as she was traveling because she had observed only one other car traveling north on Fitzger-alds Boulevard. Root also testified that Andino made a left turn into her “at the light that [she] was already going through.” Roper was killed as a result of the'accident.
¶4. Phillip Odom testified that he was stationary at the red light at the same intersection before the accident occurred. He had passed through the intersection once the light turned green and, shortly thereafter, he heard the collision. He stated that he had been about 150 feet in front of Root on Fitzgeralds Boulevard. When he looked behind him, he saw that Root’s car had been hit by another car. He did not see the actual accident take place. Odom testified that the light was green when he went through the intersection and that the light was green when Root went through the intersection, as she had proceeded behind him.
¶ 5. Lieutenant Barry Collins, with the Tunica County Sheriffs Department, testified that he got the call about the accident at 11:46 a.m. When he arrived at the scene of the accident, he asked Andino several times for his driver’s license and proof of insurance, but Andino would not respond. Finally, Andino replied that he did not speak English and that he needed to go to the hospital. Lieutenant Collins stated that he was about two feet away from Andino and could smell a “very high concentration” of alcohol on Andino’s breath. He observed that Andino had glassy eyes and slurred speech, and Lieutenant Collins communicated his observations to Captain *703 Monlito Felix and Commander Leron Weeks. Commander Weeks called DUI Officer Lieutenant Lee Clayton, who located a judge to sign a subpoena so that they could draw Andino’s blood and test it for alcohol. Both Commander Weeks and Lieutenant Clayton traveled to the hospital in Memphis, Tennessee, where Andino was transported after the accident. Commander Weeks testified that they arrived at the hospital around 3:00 p.m. and waited for the nurse to draw Andino’s blood. Andi-no’s blood-alcohol content registered at .14 percent.
¶ 6. Dean Medford, lead surveillance agent in the surveillance department at Fitzgeralds Casino, testified about the casino surveillance videos that were shown during trial. The videos showed that An-dino arrived at the casino around 4:50 a.m.,[1] went to the bar at 5 a.m., and consumed six beers in a two-hour period. The last footage of Andino showed him at the same bar at 7:24 a.m. There was no footage of Andino between 7:25 a.m. and 11:35 a.m. The footage shows Andino leaving the casino parking lot at 11:35 a.m,
¶ 7. Additional facts, as necessary, will be related during the analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

I. Sufficiency of the Evidence

¶ 8. Andino argues that the evidence was insufficient to prove that he was intoxicated at the time of the accident or that he negligently caused Roper’s death. The Mississippi Supreme Court has established that
in considering whether the evidence is sufficient to sustain a conviction in the face of a motion for [a] directed verdict or for [a] judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test[,] it is insufficient to support a conviction.
Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (citation and internal quotation marks omitted). When there is a challenge to the sufficiency of the evidence, appellate courts view the evidence in the light most favorable to the prosecution. Id. The elements of DUI homicide are: “1) operating a vehicle while under the influence of an intoxicating liquor, or operating á vehicle with [eight one-hundredths percent (.08%) ] or more by weight volume of alcohol in the person’s blood; and 2) causing the death of another in a negligent manner.” Wilkerson v. State, 731 So.2d 1173, 1179 (¶ 22) (Miss.1999) (citing Hedrick v. State, 637 So.2d 834, 837 (Miss.1994)); see also Miss.Code Ann. § 63-11-30(1), (5) (Rev.2013).
¶ 9. Emily Harper, a forensic toxicologist employed with the Mississippi Crime Lab in Jackson, Mississippi, testified that she performed the toxicology examination of Andino’s blood. She stated that Andi-no’s blood contained .14 percent concentration of alcohol at the time that his blood was drawn at the hospital. Harper detailed the safeguards taken by the Mississippi Crime Lab to prevent contamination of blood samples. She then explained that a person’s weight may affect the concentration of alcohol in his system, but that it does not affect the “elimination” of the *704 alcohol from his system over a period of time.
¶ 10. Andino argues that Professor A.K. Rosenhan’s testimony rendered the evidence of Andino’s intoxication insufficient. Testifying as an expert in blood-alcohol-content analysis, Rosenhan stated that Andino’s gender and weight made it unlikely that Andino was under the influence of alcohol at the time of the accident based on the equations and formulas that he used. However, Lieutenant Collins’s testimony and Andino’s blood test are evidence that Andino was intoxicated at the scene of the accident. There is also video evidence that Andino consumed six beers, and Andino admitted that he had two beers prior to arriving at the casino. The evidence presented by the State was sufficient for a jury to find all of the elements of the charged offense, despite Rosenhan’s testimony to the contrary, as the jury is always the final arbiter of disputed evidence. Andino’s contention that there is insufficient evidence that he was intoxicated at the time of the accident fails.
¶ 11. Andino further argues that because the State did not have an expert to reconstruct the accident, there was no conclusive evidence regarding his negligence. However, Andino cites no authority to support his assertion that the State was required to present an accident-reconstruction expert to prove his negligence. Therefore, he is procedurally barred from making this argument. Rubenstein v. State, 941 So.2d 735, 780 (¶ 196) (Miss.2006). Procedural bar notwithstanding, An-dino’s argument is without merit. Both Root and Odom testified that Root had the “right-of-way” at the intersection because the light was green as Root approached the intersection as well as when she crossed through the intersection. Root testified that Andino came out of nowhere and turned into her. Therefore, there is sufficient evidence that Andino was negligent in causing Roper’s death.
¶ 12. Next, Andino argues that the State failed to meet the requirements of Mississippi Code Annotated section 63-11-8 (Rev.2013), which mandates that “[t]he operator of any motor vehicle involved in an accident that results in a death shall be tested for the purpose of determining alcohol content or drug content .... within two hours after such accident, if possible.” (Emphasis added). More specifically, Andino contends that because his blood test was not timely and because Root was not tested, law enforcement violated the statute. In Testan v. State, 44 So.3d 977, 987 (¶ 21) (Miss.Ct.App.2008), we pointed out that the Legislature’s inclusion of the “if possible” language did not deem the two-hour time frame “necessary to ensure the integrity of the test results.” When there is no evidence that the police “deliberately delayed the test” or that the defendant was “prejudiced by the delay,” we presume that the officers complied with the statute. Id. Here, there is no evidence that the officers deliberately delayed the test, as they had acted immediately in obtaining a subpoena and traveling to Memphis to get the blood sample from Andino. There is also no evidence that Andino was prejudiced by this delay.
¶ 13. Our supreme court has clearly established that the blood test required by section 63-11-8 must be done only where there is probable cause, a warrant, consent, or when it is incident to a lawful arrest. See McDuff v. State, 763 So.2d 850, 856 (¶ 19) (Miss.2000). Based on Lieutenant Collins’s testimony, there was probable cause to test Andino’s blood. There was, however, no evidence to support a finding of probable cause that Root was operating her vehicle under the influ *705 ence of alcohol at the time of the accident. This issue is without merit.

II. New Trial

¶ 14. Andino argues that the circuit court erred in not granting his motion for a new trial. A motion for a new trial challenges the weight of the evidence. Sims v. State, 80 So.3d 866, 868 (¶ 13) (Miss.Ct.App.2012). A new trial is proper only when the verdict is against the overwhelming weight of the evidence and allowing the verdict to stand would “sanction an unconscionable injustice.” Baker v. State, 802 So.2d 77, 81 (¶ 14) (Miss.2001).
¶ 15. As support for this challenge, An-dino advances the same argument that he uses to support his attack on the sufficiency of the evidence. Based on the evidence discussed above, we cannot find that Andi-no’s guilty verdict was against the overwhelming weight of the evidence or that allowing the verdict to stand would sanction an unconscionable injustice. This issue is without merit, and the circuit court’s judgment is affirmed.
¶ 16. THE JUDGMENT OF THE TU-NICA COUNTY CIRCUIT COURT OF CONVICTION OF FELONY DRIVING UNDER THE INFLUENCE CAUSING DEATH AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ„ CONCUR.

. In his brief, Andino states that he indicated in his interview with the Tunica County Sheriff's Department that he had a couple of beers between his leaving work around 1 a.m. and arriving at Fitzgeralds Casino at 4:50 a.m. However, this interview is not in the record.