# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-KA-01901-SCT

*MICHAEL JOSEPH KRAMM*

*v.*

*STATE OF MISSISSIPPI*


DATE OF JUDGMENT:             02/12/2004
TRIAL JUDGE:                  HON. KOSTA N. VLAHOS
COURT FROM WHICH APPEALED:    HARRISON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:       ROGER WAYNE WOODALL
ATTORNEY FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
                              BY: DEIRDRE McCRORY
DISTRICT ATTORNEY:            CONO A. CARANNA, II
NATURE OF THE CASE:           CRIMINAL - FELONY
DISPOSITION:                  AFFIRMED IN PART; REVERSED AND
                              VACATED IN PART  - 02/08/2007
MOTION FOR REHEARING FILED:
MANDATE ISSUED:


**BEFORE SMITH, C.J., EASLEY AND GRAVES, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

## PROCEDURAL HISTORY

¶1.     Michael Joseph Kramm was indicted by a Harrison County grand jury in a three-count felony indictment: (1) Count I: driving a motor vehicle while under the influence and causing death, Miss. Code Ann. § 63-11-30(1)(a) and (5) (Rev. 2004); (2) Count II: driving a motor vehicle with a blood alcohol level of .08% or more and causing death, Miss. Code Ann. § 63-11-30(1)(c) and (5); (3) Count III: leaving the scene of an accident which resulted in the

death of another person, Miss. Code Ann. § 63-3-401(1) and (4). Kramm did not file a motion to quash the indictment.

¶2. Kramm was convicted in the Circuit Court of the Second Judicial District of Harrison County, Mississippi, on all three counts. Thereafter, the Honorable Kosta Vlahos sentenced Kramm to twenty years on Count I and twenty years on Count II to be served *concurrently*. He was also sentenced to five years on Count III to be served *consecutively*, for a total of twenty-five years to serve in the custody of the Mississippi Department of Corrections.

¶3. Kramm filed a post-trial motion for new trial, which was denied by the trial court. Kramm filed a motion for bail pending the outcome of his appeal and an addendum to the motion for appeal bond with a hand-written letter from Kramm attached.[1] The trial court issued an opinion and order of the court denying Kramm's request for bond pending the outcome of the appeal.

¶4. Kramm now appeals his conviction and sentence to this Court.

## FACTS

¶5. On the evening of December 4, 2002, several students from William Carey College, Joseph Nunnally, Nick Mulvaney, Treacy Staunton, and two young females, referred to as "Brin" and "Sinead," went to the Grand Casino in Biloxi to enjoy a night out before the Christmas holidays. Nunnally and Mulvaney were members of the men's soccer team at William Carey. Staunton, a native of Ireland, was a member of the women's soccer team.

---

[1] The motion for appeal bond is not in the court papers. However, the addendum is contained in the court papers.

Nunnally served as the designated driver, refraining from drinking any alcohol that evening. The students decided to leave the Grand and meet some other soccer players at another bar.

¶6.     Nunnally testified that he drove, and Staunton was seated in the back seat directly behind him. The students were traveling in a Honda. While heading west on Highway 90, Nunnally stopped at a red light at the intersection in front of Edgewater Mall. The vehicle behind them, an SUV, did not stop and slammed into the back of the Honda. The other vehicle then left the scene of the accident. The Honda was pushed through the median into a light pole. Nunnally got out of the car and then pulled Staunton out of the car. Nunnally testified that Staunton was bleeding from her mouth and her nose. Staunton did not speak. All five of the students were transported to the hospital.

¶7.     Dr. Donald Robert Doran, Jr., testified that he treated Staunton when she arrived at the hospital. Dr. Doran testified that Staunton died from blunt force trauma to the head area and stoppage of the heart. Staunton was pronounced dead when her heart would not restart.

¶8.     Danielle Rose Yarbrough testified that she and her friend Paul Duane Ladner witnessed the accident on Highway 90. Yarbrough was traveling in Ladner's car down Highway 90. Yarbrough had seen the SUV swerving in and out of the median before the accident. The SUV went up an embankment and came back onto Highway 90. Yarbrough testified that they did not have a cell phone so Ladner planned to pull into a gas station near the mall to call the police regarding the erratic driving. However, before they could pull into the gas station, Yarbrough saw the SUV slam into the back of a car. She testified that the accident occurred at approximately 1:20 a.m. Yarbrough testified that the SUV did not slow

3

down before the accident, and the driver did not hit the brakes. After the SUV left the scene of the accident, Ladner and Yarbrough followed it until it pulled into the VA.[2] After they took the SUV's tag number, they went back to the scene of the accident and informed the police.

¶9. On December 4, 2002, Lee William Valencia was employed as a security guard assigned to work the gate in front of the Armed Forces Retirement Home, located on Highway 90. Valencia observed the driver of an SUV turn off the headlights while driving slowly. The SUV turned into the gate to the Home. Valencia approached the SUV to inform the driver that he was not authorized to be on the premises. The driver told Valencia that he was looking for the admissions office at the VA. Valencia gave the driver directions, but the driver "could not figure out a way to get out" of the parking lot. Valencia decided he should call the main office for assistance. Valencia did not see the driver eat or drink anything.

¶10. Greg Connelly responded to Valencia's call for assistance. The driver exited the SUV, a Ford Explorer, when Connelly arrived. Connelly testified that the driver "appeared to be drunk, and didn't know how to leave out." Connelly stated that the driver could "hardly stand up" and was "disoriented." Connelly smelled an "intoxicating beverage on his breath," and he observed blood on the driver's face, trickling down from the lip area, and "bloodshot red eyes." The driver apologized for being so drunk and stated that he would leave his vehicle and walk home.

---

[2] Yarbrough referred to the retirement home as the VA.

4

¶11.    Connelly took the driver's driving license, which was issued by the state of Texas. Connelly removed the keys from the SUV's ignition and put the vehicle in park. The SUV had "heavy damage to the front end" which appeared to be fresh on the right passenger side and glass inside the vehicle, along with beer cans on the floorboard on the driver's side. The driver told Connelly that he had been involved in an accident "about a mile east of our location." The driver did not eat, drink, or smoke anything while in Connelly's presence. Connelly refused the driver's request to be allowed to smoke a cigarette. Connelly identified the driver of the vehicle as Michael Kramm. Connelly testified that no one else was in the vehicle with Kramm. The Gulfport Police Department was contacted for assistance.

¶12.    Officer Nicholas Sonnier, Biloxi Police Department, responded to the accident scene on December 5, 2002, at approximately 1:23 a.m. Only one car was in the median when he arrived. He was provided a description of the other vehicle, a dark-colored SUV. He advised dispatch that he was looking for a hit and run. Dispatch informed Officer Sonnier that the Gulfport Police Department had a suspect vehicle at the retirement home. Officer Sonnier arrived at the retirement home at approximately 1:40 a.m. The driver was advised of his rights. Officer Sonnier identified Kramm for the record as the individual he questioned.

¶13.    Officer Sonnier testified that he detected a strong odor of alcohol coming from Kramm's breath as he spoke. Kramm had blood coming from his lip. Kramm's speech was slurred. He also swayed back and forth as he spoke. Based on his observations, Officer Sonnier placed Kramm under arrest for suspicion of DUI and leaving the scene of an

accident. Officer Sonnier helped Kramm walk to his patrol car. A videotape of the condition of Kramm's SUV was introduced into evidence.

¶14.    Officer Sonnier transported Kramm to Biloxi Regional Medical Center to obtain medical treatment for his lip and to draw a blood sample for a blood alcohol content test. Officer Sonnier testified that he stayed with Kramm from 1:41 a.m. until the blood was drawn at approximately 3:55 a.m.  Kramm received stitches for his injuries. Officer Sonnier testified that the Biloxi Police Department sent the hospital a blood sample kit.  Once he was advised that it was time to draw the sample, Officer Sonnier had a lab technician at the hospital draw the blood.  The blood sample kit was sealed and initialed by the lab tech and Officer Sonnier, who mailed the blood samples to the Mississippi Crime Lab.  Kramm told Officer Sonnier that he was "sorry" and his insurance would cover the damages involved in the accident.   Officer Sonnier testified that Kramm was wearing an armband from the nightclub Reflections.

¶15.    Thomas Roberts, a phlebotomist at the Biloxi Regional Medical Center, testified that he drew Kramm's blood sample for the kit.  Roberts stated that he labeled the vials with his initials, placed security tape on the vials, and boxed and sealed the blood sample kit before giving it to Officer Sonnier.  Maury Phillips, section chief from the Implied Consent Section of the Mississippi Crime Lab, testified that he was the forensic toxicologist who tested the sample for the presence of alcohol.   The blood sample contained an ethyl alcohol concentration of .20 grams per percent.  The defense's witness, Patrick Demers, an expert in forensic chemistry, testified that the fact that the blood alcohol level (BAC) was .20% at

3:55 a.m. did not necessarily mean that the BAC had been higher than that at 1:20 a.m. He testified that the two and a half hours between the time of the accident and when the sample was drawn could result in significant differences in the levels. He stated he was not able to determine the level at the time of the collision from the blood sample. However, Demers stated on cross-examination that he could not testify that Kramm's BAC was less than .08% at the time of the collision. Kramm did not testify, however, the trial court conducted an examination of Kramm outside of the jury's presence to ensure that he understood he had a right to testify as well as a right to not testify in his defense.

## ANALYSIS

I. **Whether Count I and Count II of the indictment, which resulted in conviction and sentence under both counts, are the same crime.**

¶16. Kramm was indicted on three separate counts, Count I and Count II both being under Miss. Code Ann. § 63-11-30 (Rev. 2004). Count I of the indictment is pursuant to Miss. Code Ann. § 63-11-30(1)(a), and Count II of the indictment is pursuant to Miss. Code Ann. § 63-11-30(1)(c). According to the record, Kramm did not file a motion to quash the indictment before trial. Kramm argues that the two subsections described the same crime. Kramm asserts that if both his convictions and sentences under Count I and II, along with his conviction and sentence under III of the indictment, are allowed to stand, he will qualify as a habitual status offender.

¶17. Miss. Code Ann. § 63-11-30(1) provides:

> It is unlawful for any person to drive or otherwise operate a vehicle within this state who **(a) is under the influence of intoxicating liquor;** (b) is under the

7

influence of any other substance which has impaired such person's ability to operate a motor vehicle; **(c) has an alcohol concentration of eight one-hundredths percent (.08%) or more for persons who are above the legal age to purchase alcoholic beverages under state law,** or two one-hundredths percent (.02%) or more for persons who are below the legal age to purchase alcoholic beverages under state law, in the person's blood based upon grams of alcohol per one hundred (100) milliliters of blood or grams of alcohol per two hundred ten (210) liters of breath as shown by a chemical analysis of such person's breath, blood or urine administered as authorized by this chapter; (d) is under the influence of any drug or controlled substance, the possession of which is unlawful under the Mississippi Controlled Substances Law; or (e) has an alcohol concentration of four one-hundredths percent (.04%) or more in the person's blood, based upon grams of alcohol per one hundred (100) milliliters of blood or grams of alcohol per two hundred ten (210) liters of breath as shown by a chemical analysis of such person's blood, breath or urine, administered as authorized by this chapter for persons operating a commercial motor vehicle.

(Emphasis added).

¶18.    This Court previously has examined Miss. Code Ann. § 63-11-30(1)(a) and (c) to determine whether the prosecution may proceed to trial under both subsections. *Young v. City of Brookhaven*, 693 So. 2d 1355, 1357 (Miss. 1997). The Court interpreted the two subsections as merely providing two different ways to prove a single violation. *Id*. at 1358. The Court affirmed Young's conviction, finding no error in the prosecution's choice to proceed under both subsections rather than electing to proceed under just one. *Id*. The Court stated that "Miss. Code Ann. § 63-11-30 merely sets forth numerous methods of committing the same crime." *Id*.

¶19.    However, unlike the case at hand, the Court in *Young* did not convict and impose sentence under both subsections of Miss. Code Ann. § 63-11-30. *Young*, 693 So. 2d at 1358.

8

Accordingly, Kramm is correct that his conviction and sentence under Count I and Count II amounted to being convicted and sentenced twice for the same crime.

¶20. Having imposed a conviction and sentence under Count I, the trial court erred by accepting the conviction under Count II and imposing a separate twenty-year sentence under Count II. The trial court sentenced Kramm to serve a separate twenty-year sentence under Count II to run concurrently with the twenty-year sentence imposed under Count I. Therefore, the judgment of the trial court as to Count II is reversed and judgment rendered to vacate the conviction and sentence imposed under Count II. However, Kramm's twenty-year sentence under Count I and five-year sentence under Count III, to run consecutively with the sentence under Count I, for a total of twenty-five years in the custody of the Mississippi Department of Corrections, is affirmed.

## II. Whether the State meets its burden of proof on Count III.

¶21. Kramm argues that the State failed to prove that he was the driver of the SUV at the time of the accident. The State asserts that there is no proof that Kramm was not the driver of the SUV at the time of the accident. In *Holloway v. State*, 860 So. 2d 1244, 1246-47 (Miss. Ct. App. 2003), the court held:

> A person may be arrested, tried, and convicted of operating a motor vehicle while under the influence of an intoxicating liquor even if there is no eyewitness presented who viewed the defendant operating the vehicle, provided there is sufficient evidence. *Horn v. State*, 825 So. 2d 725 (Miss. Ct. App. 2002). Reasonable doubt need not be removed about whether the defendant had actually driven the vehicle prior to his discovery. *Lewis* [*v. State*], 831 So. 2d [553, 558 (Miss. Ct. App. 2002)].

> In *Lewis*, 831 So. 2d at 558, the court similarly stated the following:

9

We hold that to be guilty of driving or operating a motor vehicle while under the influence of drugs or alcohol, or with an illegally high blood alcohol content, the person must be shown by direct proof or reasonable inferences to have driven the vehicle while in that condition, or as in *Jones* [ *v. State*, 461 So. 2d 686 (Miss. 1984)] to be "operating" the vehicle while sitting behind the wheel, in control with the motor running. Reasonable doubt need not be removed about whether the defendant had actually driven the vehicle prior to his discovery. Proof of the imminence of such driving by being the "operator" of a vehicle that has its motor running is itself an offense even if the offender has yet to move the vehicle.

Driving under the influence is a serious crime with serious risks to the public. It may often be difficult to catch an offender in the act. He or she may be discovered only after causing a horrendous accident or perhaps, as alleged by the State here, only after the intoxication causes the driver to stop for awhile. In order to avoid the former harm we do not believe that we have the authority to relax the proof necessary to convict in the latter instance. Perhaps intoxicated individuals in vehicles for whom no proof exists of past act or future intent to move the vehicle should be guilty of some offense, such as public intoxication if the vehicle is in a public place. Miss. Code Ann. § 97-29-47 (Rev. 2000). Being found alone in a vehicle alongside the road, even when an excuse is later offered, may be sufficient to infer past driving. If the motor is running, the separate element of operating the vehicle is proven.

¶22. Following the guidance provided in *Holloway* and *Lewis*, we conclude that the State is not required to provide eyewitness evidence that Kramm was the driver of the SUV at the time of the accident as long as it provides sufficient proof supporting a reasonable inference that the defendant was driving the vehicle. *See also Turner v. State*, 910 So. 2d 598, 610 (Miss. Ct. App. 2005).

¶23. Kramm raised the State's alleged failure to prove that he was the driver of the SUV at the time of the accident in his motion for new trial. This Court has repeatedly held that a motion for new trial challenges the weight of the evidence. *Sheffield v. State*, 749 So. 2d 123, 127 (Miss. 1999). A reversal is warranted only if the trial court abused its discretion in

10

denying a motion for new trial. *Id*. In *Bush v. State*, 895 So. 2d 836, 844 (Miss. 2005), this Court set out the standard of review for weight of the evidence:

> When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. *Herring v. State*, 691 So. 2d 948, 957 (Miss. 1997). We have stated that on a motion for new trial, the court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. *Amiker v. Drugs For Less, Inc*., 796 So. 2d 942, 947 (Miss. 2000). However, the evidence should be weighed in the light most favorable to the verdict. *Herring*, 691 So. 2d at 957. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, "unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict." *McQueen v. State*, 423 So. 2d 800, 803 (Miss. 1982). Rather, as the "thirteenth juror," the court simply disagrees with the jury's resolution of the conflicting testimony. *Id*. This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. *Id*. Instead, the proper remedy is to grant a new trial.

¶24. Here, no new trial is warranted, as the jury's verdict is consistent with the weight of the evidence allowing the State the benefit of all reasonable inferences drawn from the evidence. Sitting as the "thirteenth juror," we find that the evidence and testimony, weighed in the light most favorable to the verdict, support the jury's conviction.

¶25. Yarbrough testified that she witnessed the accident, which occurred at approximately 1:20 a.m. She testified that the SUV did not slow down before the accident and the driver did not hit the brakes. The SUV left the scene of the accident. Yarbrough and Ladner followed the SUV to where it pulled in at the retirement home. Yarbrough wrote down the SUV's tag number and then went back to the scene of the accident and informed the police.

11

She did not testify that she observed a change of drivers in the SUV. At the retirement home, Valencia testified that he observed the SUV pull into the parking lot with its lights turned off. He told Kramm that he could not park there.

¶26. When Kramm did not leave, Valencia called for assistance. When Connelly arrived, he spoke to Kramm and took his driver's license from him and took the keys out of the ignition. Kramm smelled of alcohol, could hardly stand up, and was bleeding. Connelly observed the damage to Kramm's SUV. Kramm apologized to Connelly for being so drunk, and he told Connelly that he had been involved in an accident "about a mile east of our location." Connelly testified that no one else was in the vehicle with Kramm.

¶27. The security guards at the retirement contacted the police for assistance. Officer Sonnier arrived at the retirement home at approximately 1:40 a.m. Officer Sonnier detected a strong odor of alcohol coming from Kramm's breath as he spoke. Kramm's speech was slurred, and he also swayed back and forth as he spoke. Officer Sonnier testified that Kramm told him that he was "sorry" and his insurance would cover the damages involved in the accident. Kramm did not tell Officer Sonnier that someone else was driving the SUV at the time of the accident.

¶28. On the record, the weight of the evidence presented by the State supported the jury's verdict. Accordingly, we find that the trial court did not abuse its discretion in overruling Kramm's motion for a new trial.

**CONCLUSION**

12

¶29. For the foregoing reasons, the judgment of the Circuit Court of the Second District of Harrison County, Mississippi, is affirmed in part and reversed and vacated in part.

¶30. **COUNT I: CONVICTION OF FELONY DRIVING UNDER THE INFLUENCE AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF FELONY DRIVING UNDER THE INFLUENCE AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, REVERSED AND VACATED. COUNT III: CONVICTION OF LEAVING THE SCENE OF AN ACCIDENT AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT III SHALL RUN CONSECUTIVELY WITH THE SENTENCE IN COUNT I FOR A TOTAL OF TWENTY-FIVE YEARS.**

**SMITH, C.J., WALLER AND COBB, P.JJ., DIAZ, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY.**