# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-01228-COA

SARA JANE KOCH A/K/A SARA KOCH A/K/A SARA J. KOCH         APPELLANT

v.

STATE OF MISSISSIPPI         APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 07/24/2015 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS JR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: MOLLIE MARIE MCMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALICIA MARIE AINSWORTH |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF FELONY DRIVING UNDER THE INFLUENCE CAUSING DEATH OR DISFIGUREMENT AND SENTENCED TO TWENTY-FIVE YEARS, WITH SEVEN YEARS SUSPENDED, EIGHTEEN YEARS TO SERVE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND FIVE YEARS' POSTRELEASE SUPERVISION, AND TO PAY $5,750 IN RESTITUTION |
| DISPOSITION: | AFFIRMED - 01/10/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND FAIR, JJ.**

**LEE, C.J., FOR THE COURT:**

## PROCEDURAL HISTORY

¶1.   On March 25, 2013, Sara Jane Koch was indicted on two counts of felony driving under the influence (DUI) causing death or disfigurement. Count I charged aggravated DUI[1] while Koch was under the influence of intoxicating liquor pursuant to Mississippi Code Annotated section 63-11-30(1)(a) (Supp. 2016). Count II charged aggravated DUI[2] while Koch's blood-alcohol content (BAC) was over .08% pursuant to Mississippi Code Annotated section 63-11-30(1)(c) (Rev. 2013).[3] A jury in the Harrison County Circuit Court, Second Judicial District, found Koch guilty of aggravated DUI. Koch was sentenced to twenty-five years, with seven years suspended, eighteen years to serve in the custody of the Mississippi Department of Corrections (MDOC), and five years of postrelease supervision. Koch was also ordered to pay $5,750 in restitution. After her posttrial motions were denied, Koch appealed, asserting the following: (1) the indictment was defective; (2) the jury was not properly instructed; (3) the trial court erred by allowing the State's expert witness to give opinion testimony; and (4) her conviction and sentence need clarification.

## FACTS

¶2.   At 5:11 a.m. on February 1, 2012, Koch called 911 to report that she had hit a pedestrian while driving on Interstate 10 in D'Iberville, Mississippi. She told the 911 dispatcher that "someone was in my lane[,] and I hit them[,] and I'm sure I killed them." At

---

[1] Miss. Code Ann. § 63-11-30(5) (Supp. 2016).

[2] *Id.*

[3] Section 63-11-30 has since been amended, and subsection (c) relating to BAC is now Mississippi Code Annotated section 63-11-30(1)(d) (Supp. 2016).

2

one point, Koch stated, "[T]here was a car[4] in the middle of the road that was there, so I hit them." The 911 operator responded, "So you say there was another car, and the person was standing near the car?" Koch responded, "Yes, on the side of the road."

¶3.     D'Iberville Police Officer Kevin Sidaway arrived on the scene around 5:15 a.m. Officer Sidaway testified he pulled up behind Koch's car, and she was parked in the emergency lane.[5] Officer Sidaway stated he walked to the passenger side of the car for safety purposes, and once Koch had rolled the window down, he noted the smell of alcohol inside the car. Officer Sidaway testified that Koch was crying hysterically. He also stated that he did not drive over any debris in the road while approaching Koch's car. Another officer had arrived at the same time as Officer Sidaway but parked further back.

¶4.     Officer Kenneth Goins, a DUI-enforcement officer with the D'Iberville Police Department (DPD), arrived at 5:23 a.m. Officer Goins noted the smell of alcohol in Koch's car. He testified that as he walked Koch to his patrol car, she "was unsteady on her feet, kind of swaying and stumbling a little bit." Koch was still crying. Officer Goins read Koch her *Miranda*[6] rights, arrested her, and transported her to the D'Iberville police station. Officer Goins obtained a warrant for a blood test, and Koch's blood was drawn at a local hospital at 6:59 a.m. At some point, Koch told Officer Goins that she had consumed five alcoholic beverages prior to the accident.

---

[4] There was no other evidence of this.

[5] This lane is also referred to in the record as the breakdown lane or the shoulder.

[6] *Miranda v. Arizona*, 384 U.S. 436 (1966).

¶5.     Terry Hines, a captain with the DPD, arrived at the scene at 5:50 a.m. Captain Hines walked down the emergency lane, noting the debris from the accident. Captain Hines noted that no debris was found in the right lane of Interstate 10; rather, debris was found in the emergency lane and in the grass on the side of the interstate. According to Captain Hines, the victim, Donald Sullivan, had been walking to work when Koch struck him. Sullivan's body was found in the grassy area approximately thirty or forty feet from the emergency lane. During his investigation, Captain Hines learned that Koch had been at the Hard Rock Casino in Biloxi, Mississippi, prior to the accident. Captain Hines also obtained a warrant to search Koch's cell phone.

¶6.     Several hours after the accident, Koch called a friend from jail. This call had been recorded and was played for the jury during trial. Koch's friend asked her if Sullivan was walking on the interstate or on the side. Koch responded, "Apparently on the side. I don't remember much."

¶7.     Donnie Dobbs, a detective with the Biloxi Police Department (BPD), assisted the DPD with the data recovery from Koch's cell phone. Detective Dobbs testified that Koch had been exchanging text messages with someone Koch referred to as "Brucie Boyfran." At 4:41 a.m., Koch sent Brucie a text that said, "Driving. Go R [sic]." And then at 4:42 a.m., she sent him another text that said, "I'm f'd up." Koch texted Brucie several more times and called him at 5:10 a.m. The duration of the call was fifty seconds. The next outgoing call was the 911 call at 5:11 a.m. The last activity on Koch's phone was a text from Brucie at 5:24 a.m., stating, "Pick up the phone. I'm worried about you. You just called me up

4

crying."

¶8.    John Doucet, an officer with the BPD, assisted the DPD with the investigation. Officer Doucet was accepted as an expert in accident reconstruction. After investigating the accident scene, Officer Doucet noted no skid marks or broken glass in either the emergency lane or the right lane of the interstate. Using the "cone of evidence" or "cone of debris" method to estimate the area of impact, Officer Doucet concluded that he was able to form an opinion within a reasonable degree of scientific certainty that Sullivan was walking in the emergency lane when he was hit.

¶9.    Emily Harper, a forensic toxicologist with the Mississippi State Crime Lab, testified that Koch's BAC was .18%. And that based upon the time Koch's blood was drawn, Koch's BAC at the time of the accident would have been higher.

¶10.    Dr. Mark LeVaughn, a forensic pathologist and Mississippi's chief medical examiner, testified regarding the autopsy results. Dr. LeVaughn stated that Sullivan's cause of death was multiple blunt-force injuries and these injuries were consistent with being struck from behind by a car while standing upright. Dr. LeVaughn testified that the car struck Sullivan's right leg first, then the force of the impact propelled Sullivan onto Koch's car, where his head struck the windshield. Sullivan then bounced off the car and landed in the grass to the side of the interstate.

¶11.    Jason Walton testified for Koch as an expert in accident reconstruction. Walton testified that Officer Doucet's use of the cone-of-evidence method to determine the area of impact was not a reliable method for a higher-speed impact. And that Officer Doucet had

5

not applied the cone-of-evidence method correctly. Due to the lack of evidence and information, Walton testified it was impossible to determine the area of impact—that it could have occurred in the emergency lane or in the right lane of the interstate.

¶12. Officer Michael Davis, an expert in accident reconstruction with the BPD, was called by the State in rebuttal. Officer Davis testified that Walton did not employ the cone-of-evidence method correctly. Officer Davis stated that by using the correct method, he determined that Sullivan would have been walking in the emergency lane when Koch struck him.

## DISCUSSION

### I. Indictment

¶13. In her first issue, Koch argues that the indictment failed to allege a specific negligent act. Issues concerning the sufficiency of an indictment are questions of law; thus, our standard of review is de novo. *Taylor v. State*, 94 So. 3d 298, 305 (¶14) (Miss. Ct. App. 2011). Count I stated: Koch "did unlawfully, willfully, and feloniously, drive or operate a motor vehicle . . . while under the influence of intoxicating liquor, and did thereby in a negligent manner cause the death of . . . Sullivan . . . in violation of Section 63-11-30(1)(a) and (5). . . ." Count II stated: Koch "did unlawfully, willfully, and feloniously, drive or operate a motor vehicle . . . during a time in which [she] . . . had [a BAC] of . . . 0.18% . . . and did thereby in a negligent manner cause the death of . . . Sullivan . . . in violation of Section 63-11-30(1)(c) and (5)[.]"

¶14. Prior to trial, Koch filed a motion to dismiss the indictment because it did not include

6

the specific negligent act. During the hearing on the motion to dismiss, the State argued its theory was that Koch had veered into the emergency lane when she hit Sullivan. And that Koch was on notice due to the information she received during discovery—including police reports, crime-lab reports, and accident-reconstruction reports. The trial court denied Koch's motion.

¶15. Koch acknowledges that the accident report noted "failure to keep proper lane/run off the road," but argues that the indictment was insufficient for failing to include this language. Koch cites to *Tran v. State*, 962 So. 2d 1237 (Miss. 2007), and *Taylor* for support. In *Tran*, the defendant was convicted of money laundering. *Tran*, 962 So. 2d at 1240-41 (¶13). The Mississippi Supreme Court found that an indictment for money laundering must inform the defendant of the specific unlawful acts that produced the funds the defendant was accused of laundering. *Id*. at 1248 (¶45). The indictment did not state the underlying offense—it simply stated the funds represented proceeds from "some unlawful activity." *Id*. at 1241 (¶13). However, the supreme court found any error was harmless since the defendant was on notice of the unlawful activity—drug trafficking—and was provided the opportunity to prepare a defense. *Id*. at 1248 (¶45).

¶16. Like Koch, the defendant in *Taylor* was convicted of aggravated DUI and alleged on appeal that the indictment was defective for failing to include the specific negligent act. *Taylor*, 94 So. 3d at 303, 305 (¶¶1,14). This Court determined that regardless of the sufficiency of the indictment, the defendant "had notice of the basis for the negligence charged in the indictment." *Id*. at 307 (¶20). We did not determine whether an indictment

7

for aggravated DUI was required to allege a specific negligent act: "To be clear, we do not find that an indictment for [aggravated DUI] *is or is not* required to allege a specific basis for an allegation of negligence." *Id.* (emphasis added).

¶17.    During the hearing on Koch's motion to dismiss, the State indicated the discovery materials stated that Koch was driving under the influence and "failed to keep a proper lane and ran off the road." To reiterate, Koch did acknowledge that the accident report indicated "failure to keep proper lane/run off the road." And Koch's defense called an expert to rebut the State's theory that Koch had run off the road. Further, at various times during the trial, Koch's attorney indicated that he had prepared a defense based upon the State's theory that Koch was in the emergency lane when she struck Sullivan. As in *Taylor*, we find Koch had notice of the basis for the negligence charged in the indictment.

¶18.    Koch also contends that the State entered her text messages into evidence to prove texting and driving was the negligent act. The State counters that the text messages were introduced to prove Koch was intoxicated. Koch had filed a motion in limine to prohibit the admission of the text messages into evidence. The trial court granted Koch's motion in part by limiting the admission of the text messages and phone calls to those Koch made right before and right after the accident. During trial, Koch objected to the admission of the texts and phone calls, claiming that the State was attempting to prove she was negligent by texting and driving. The trial court noted that this information had already been shown to the jury and, while the text messages and phone calls had "some probative value, . . . [they did not] prove that she was on the phone or she was texting at the time the incident took place." The

trial court further stated, "I think the negligent act is being . . . on the shoulder of the road, if there is a negligent act. . . . [The texting] is just a fact that is in front of the jury." We find no error by the trial court in allowing the text messages into evidence.

## II.    Jury Instructions

¶19.    Koch next contends that the jury should have been instructed on the specific act of negligence. Koch argues that even if she was on notice regarding the negligent act, the jury was only generally instructed on negligence. On review of a challenge to a jury instruction, "[w]e will not find reversible error where the instructions actually given, when read together as a whole, fairly announce the law of the case and create no injustice." *Ford v. State*, 975 So. 2d 859, 864 (¶11) (Miss. 2008) (citation omitted).

¶20.    Instruction S-3 states:

> The [c]ourt instructs the [j]ury that [n]egligence is the failure to use reasonable care. Reasonable care is that degree of care which a reasonably careful person would use under like or similar circumstances. Negligence may consist either in doing something that a reasonable[,] careful person would not do under like or similar circumstances or in failing to do something that a reasonable[,] careful person would do under like or similar circumstances. Simple negligence is sufficient for a conviction of Driving Under the Influence Causing Death or Disfigurement.

We noted in *Taylor* that "simple negligence is enough to support a conviction under section 63-11-30(5)." *Taylor*, 94 So. 3d at 314 (¶51) (citations omitted). And that "[s]imple negligence has been defined as the failure to exercise reasonable care under the circumstances." *Id.* (citation and internal quotation marks omitted). Here, the jury was properly instructed on simple negligence. This issue is without merit.

## III.    Expert Testimony

9

¶21.    Koch argues that the State's expert witnesses should not have been allowed to give opinion testimony regarding Sullivan's location on the road at the time of the accident. Expert testimony must be relevant and reliable. *Galloway v. State*, 122 So. 3d 614, 632 (¶27) (Miss. 2013). "Expert testimony is relevant if it will 'assist the trier of fact in understanding or determining a fact at issue.'" *Id.* (quoting *Ross v. State*, 954 So. 2d 968, 996 (¶57) (Miss. 2007)). "Expert testimony is reliable if it is 'based on methods and procedures of science,' not 'unsupported speculation.'" *Id.* (quoting *Ross*, 954 So. 2d at 996 (¶57)). Under our modified *Daubert*[7] standard, expert testimony should be admitted under Mississippi Rule of Evidence 702 if the witness is qualified and the witness's testimony "assist[s] the trier of fact in determining or understanding a fact at issue." *Anderson v. State*, 62 So. 3d 927, 938 (¶32) (Miss. 2011). The admission of expert testimony is within the trial court's discretion. *Newell v. State*, 176 So. 3d 78, 80 (¶8) (Miss. Ct. App. 2014).

### A.    Accident-Reconstruction Experts

¶22.    Koch argues that the State's experts in accident reconstruction—Doucet and Davis—were not qualified because the cone-of-evidence theory is not based upon sound scientific principles. Specifically, Koch claims neither expert could state whether this method had been peer reviewed or published. As described by both experts, this theory was used to determine the area of impact based upon the location of the debris and, in this case, the location of the victim's body. Prior to trial, Koch filed a motion to exclude both experts' testimonies.

---

[7] *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579 (1993), *as modified in Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

10

¶23. After a hearing on Koch's motion, the trial court determined that Doucet, Davis, and Walton (Koch's expert) were qualified as experts in accident reconstruction. The trial court noted that the training and education of all three experts was comparable, the experts had taken some of the same courses, and all three had extensive experience. The trial court stated that all three experts agreed that it was possible to determine the area of impact, but not the point of impact. We cannot find the trial court abused its discretion in allowing the State's expert witnesses to testify regarding the area of impact.

### B. Dr. LeVaughn

¶24. Koch contends that Dr. LeVaughn should not have been allowed to testify that Sullivan was standing on the shoulder of the road when he was struck. Koch argues this testimony was outside of Dr. LeVaughn's area of expertise and not based on any medical principles. Dr. LeVaughn stated that Sullivan's cause of death was multiple blunt-force injuries and those injuries were consistent with being struck from behind by a car while standing upright. During cross-examination, Koch asked if Dr. LeVaughn had an opinion on what Sullivan was doing prior to impact. Dr. LeVaughn responded, "Prior to impact, no, sir. I can just testify to the pattern of injuries that I saw." Koch then asked if Dr. LeVaughn knew where Sullivan was standing at the time of impact, and he replied, "The pattern of injuries, combined with the patient and the vehicle, would indicate to me that he was at least off to the side of the road somewhat." Koch then asked Dr. LeVaughn to explain his answer. Dr. LeVaughn stated, "Because the impact was on the passenger side of the vehicle, which is on the right side of the road. And the scene photographs showed that he was found in the

11

grass off to the side of the road."

¶25.    On redirect, the State asked Dr. LeVaughn, "Would you deem that [Sullivan] was in the breakdown lane based upon what [you have] testified to?" Koch then objected, stating, "I think this is outside [Dr. LeVaughn's] field of expertise." The trial court responded, "You asked the question. I [am] going to allow a follow-up." Dr. LeVaughn responded, "Again, from the pattern of injury and the photographs that I reviewed, I would think he was in the area of the breakdown lane." Koch argues these statements by Dr. LeVaughn were not based upon any medical principles. Regardless of whether these statements by Dr. LeVaughn were outside his area of expertise, Koch opened the door during cross-examination by asking Dr. LeVaughn where Sullivan was standing at the time of impact. The trial court did not abuse its discretion in allowing the State to question Dr. LeVaughn about his statements during redirect. *See Jackson v. State*, 766 So. 2d 795, 807 (¶37) (Miss. Ct. App. 2000). This issue is without merit.

### IV.    Clarification of Conviction and Sentence

¶26.    Lastly, Koch contends that her case should be remanded for clarification. The record indicates that Koch was indicted on two counts of DUI but that the jury returned a general verdict of guilty without specifying which count it found her guilty of.[8] The sentencing order does not specify which count Koch was convicted of, but it lists one conviction and one sentence.

---

[8] The jury properly followed the instructions as given. Instruction C-5A instructed the jury that if it were to find Koch guilty "in Count I or II, the form of your verdict shall be: 'We the jury find . . . Koch guilty of Felony Driving Under the Influence Causing Death or Disfigurement.'"

¶27. However, according to Koch, the MDOC website shows her guilty of two counts of aggravated DUI and serving two separate sentences. Koch is correct that she cannot be convicted of two counts of aggravated DUI in this particular circumstance. *See Kramm v. State*, 949 So. 2d 18, 23 (¶¶18-19) (Miss. 2007). The record is clear, though, that Koch was only convicted and sentenced on one count of aggravated DUI. If Koch has issues with her MDOC documentation, she can file a grievance with the MDOC.

¶28. **THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT, OF CONVICTION OF FELONY DRIVING UNDER THE INFLUENCE CAUSING DEATH OR DISFIGUREMENT AND SENTENCE OF TWENTY-FIVE YEARS, WITH SEVEN YEARS SUSPENDED, EIGHTEEN YEARS TO SERVE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND FIVE YEARS' POSTRELEASE SUPERVISION, AND TO PAY $5,750 IN RESTITUTION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.**

**IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR. WESTBROOKS, J., NOT PARTICIPATING.**