# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-01519-COA

**KALEIGH ANN DARTEZ A/K/A KALEIGH DARTEZ**                     **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                      **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/14/2017 |
| TRIAL JUDGE: | HON. LISA P. DODSON |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALICIA MARIE AINSWORTH |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/11/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., FAIR AND WILSON, JJ.**

**WILSON, J., FOR THE COURT:**

¶1. Kaleigh Dartez had a blood-alcohol concentration of at least .219 percent when she wrecked her car while traveling on Kiln-Delisle Road after 3 a.m. on November 14, 2014. Dartez's passenger, Zackary Whitfield, was killed in the wreck, and Dartez was indicted, convicted, and sentenced for aggravated DUI. On appeal, Dartez argues that (1) her indictment was defective because it did not allege a specific act of negligence, (2) the jury instructions were erroneous because they did not identify a specific act of negligence, (3) the

jury instructions on negligence were erroneous and confusing, (4) the jury's guilty verdict was against the overwhelming weight of the evidence, and (5) she was entitled to an acquittal because her indictment mistakenly referenced the wrong subsection of the DUI statute.

¶2.     Dartez's first two arguments fail in light of this Court's recent holding that under the aggravated DUI statute "[t]he State is not required to prove a specific act of negligence, only that the death was caused in a negligent manner." *Friston v. State*, 243 So. 3d 198, 205 (¶34) (Miss. Ct. App. 2017), *cert. denied*, 246 So. 3d 71 (Miss. 2018).  In addition, we hold that the jury was fairly and adequately instructed, the jury's verdict was not against the overwhelming weight of the evidence, and Dartez's indictment clearly informed her of the nature of the charges.  Accordingly, Dartez's conviction and sentence are affirmed.

## FACTS AND PROCEDURAL HISTORY

¶3.     On November 14, 2014, around 4 a.m., Harrison County deputy sheriff Brandon Hendry was on his way home after his shift.  As Hendry drove down Kiln-Delisle Road, he saw a man and a woman, later identified as Dartez, standing near a large delivery truck, which was stopped in the road with its hazard lights flashing.  Hendry stopped and turned on his car's blue lights, which also activated the car's two video cameras.  One camera records video in front of the car with audio from the officer's body microphone; the other camera records video and audio in the backseat of the car.

¶4.     The man, a truck driver, told Hendry that he had come upon Dartez standing in the middle of the road, dazed and injured.  Dartez's head was bleeding.  Hendry also noticed that Dartez's speech was slurred, and "[s]he had an overwhelming odor of some sort of alcoholic

2

or intoxicating beverage." Hendry did not see any signs of a car wreck. Indeed, he could not even see Dartez's car, but he inferred that there must have been a wreck nearby. Hendry asked Dartez whether anyone else was in the car with her, but Dartez said that she did not know. Dartez stated several times that her car was still at the bar and denied that she had been driving or in a wreck. Dartez asked to sit down in the back of Hendry's patrol car. Hendry allowed her to do so while he used a spotlight to search for a wrecked vehicle. Approximately 100 feet up the road, Hendry spotted a severely damaged Toyota Camry. The car was in tall, thick brush about fifty feet off the road.

¶5. With some difficulty, Hendry was able to crawl through the brush to the car. The car was on its side, and its windshield was broken. Zackary Whitfield's body was on the ground outside the car, and Hendry quickly determined that Whitfield was deceased. At that point, Hendry did not know who had been driving the car. However, he believed that the car belonged to Dartez because the personal items in it appeared to belong to a woman. He also noticed that "[t]he driver's seat was fairly close to the steering wheel."

¶6. Paramedics Robert Pino and Joseph Cutshall arrived and examined Dartez, who was still in the back of Hendry's patrol car. The patrol car's interior camera recorded their interactions with Dartez. The paramedics also testified at trial. To help assess what types of injuries Dartez might have sustained, they asked her where she had been in the car. Dartez told them that she had been driving. Dartez also had a large cut over her right eye and blood on her face. Dartez was able to answer questions about where and who she was, but she was unable to tell Pino what day it was. Dartez told them that she had been driving and that she

had drunk six beers that night. A nurse at the hospital testified that Dartez smelled of alcohol and stated that she had been drinking prior to the wreck. Dartez's blood-alcohol concentration was .219 percent approximately three hours after the wreck when her blood was drawn at the hospital. Dartez tested negative for controlled substances.

¶7. Zack Berger testified that on November 13, 2014, he and Whitfield had dinner and then had drinks at two bars before meeting friends at Grog's Bar in Diamondhead. Whitfield had driven them there in his truck. Whitfield and Berger arrived at Grog's between 11:30 p.m. and midnight and stayed until around 3 a.m. When they started to leave, Whitfield initially said that he would drive Berger and another friend to his house in his truck. However, Whitfield then said that he was going to ride to his house with Dartez. Whitfield asked Berger to drive his truck, and Berger agreed. Berger did not actually see Whitfield or Dartez get into Dartez's car. Nor did Berger see who was driving Dartez's car. Berger drove away from Grog's before Dartez and Whitfield.

¶8. Jodi Taylor and Amber McCaffrey testified that they met Whitfield and Berger at Grog's Bar around midnight or 1 a.m. They had seen Dartez and a friend of hers at another bar earlier in the night, and Dartez and her friend arrived at Grog's shortly after they did. Taylor and McCaffrey were not drinking, but everyone else in the group was drinking beer. They all left the bar around 3 a.m. Taylor and McCaffrey were going to McCaffrey's house. The others were going to Whitfield's house. Taylor saw Dartez and Whitfield get into Dartez's car, with Dartez in the driver's seat and Whitfield in the passenger's seat. Taylor asked Dartez if she was "okay to drive," and Dartez said that she was. The sheriff's office

4

obtained video of the parking lot at Grog's. The video was played at trial, and Taylor identified herself, Dartez, and Whitfield.

¶9. Sergeant Glenn Roe of the Harrison County Sheriff's Office testified, without objection, as an expert in accident reconstruction. Roe responded to the wreck, took pictures of the scene, and marked the location of evidence for collection. He also took measurements of the scene and diagramed it to scale. Specifically, Roe examined the location of the car and Whitfield's body, skid marks on the road, and tire tracks made once the car left the road. Roe testified that as the car entered a curve, it crossed the center line. The driver then overcorrected and lost control. The car left the road, traveled on the shoulder, hit a shallow ditch, and flipped before coming to rest on the driver's side. As the car flipped, Whitfield was ejected.

¶10. Roe also examined the vehicle itself, including the position of the seats, the seatbelts, and the deployed airbags. He noted that the passenger seat was reclined slightly and pushed further back, while the driver's seat was upright and closer to the steering wheel. The seatbelts were unlatched and in their usual positions. Roe could not say why the car had left its proper lane of travel. He acknowledged that the driver could have made a necessary evasive maneuver before losing control of the car. He testified that there were no known problems with the car, but he acknowledged that he had not checked the brakes or steering mechanisms. Although he did not check the locking mechanism on the driver's seat, he explained that based on the trajectory of the car, had the locking mechanism been broken, the seat would have been all the way back, not close to the steering wheel.

¶11.   Other witnesses testified about blood and other fluid samples taken from the wreck and from Whitfield and Dartez.  DNA from a bloodstain on the passenger airbag matched a sample taken from Whitfield.  A general DNA swab from the driver's side airbag revealed the DNA of at least three people, and Dartez's DNA "could not be excluded" as being present.  Whitfield was excluded from that sample.

¶12.   After the State rested, Dartez called one witness, her godmother, Judy Maxwell.  Maxwell testified that when she saw Dartez at the hospital, Dartez had a large bruise on her right shoulder.  Dartez's counsel suggested that the location of the bruise indicated that Dartez had been in the passenger's seat when the wreck occurred.  Dartez did not testify.

¶13.   The court instructed the jury on two distinct counts of aggravated DUI.  In Count I, Dartez was charged with driving while under the influence of intoxicating liquor and negligently causing Whitfield's death.  *See* Miss. Code Ann. § 63-11-30(1)(a) & (5) (Rev. 2014).   In Count II, Dartez was charged with driving while having a blood-alcohol concentration of .08 percent or more and negligently causing Whitfield's death.  *See* Miss. Code Ann. § 63-11-30(1)(d) & (5) (Rev. 2014).  The court further instructed that Count I and Count II were "merely two (2) different ways to address a single offense" and that, if the State met its burden of proof on either count, the jury should return a guilty verdict on only one count.  The jury returned a guilty verdict as to Count II.

¶14.   The court sentenced Dartez to serve twenty-five years in the custody of the Department of Corrections with twelve years suspended, thirteen years to serve, and five years of reporting probation.  Dartez filed a motion for a judgment notwithstanding the

verdict or a new trial, which the trial court denied, and a timely notice of appeal.

## ANALYSIS

### I. Indictment

¶15. Dartez argues that her indictment was defective because it did not allege a specific negligent act as an element of her aggravated DUI charges. The indictment alleged that Dartez drove "while under the influence of intoxicating liquor" (Count I) and with a blood-alcohol concentration of .08 percent or more (Count II). Both counts further alleged that Dartez "did . . . in a negligent manner cause [Whitfield's] death." Dartez claims that the indictment's failure to allege a specific act of negligence deprived her of her constitutional right to notice of the "nature and cause of the accusation" against her. U.S. Const. amend VI; Miss. Const. art. 3, § 26.

¶16. "Issues concerning the sufficiency of an indictment are questions of law; thus, our standard of review is de novo." *Koch v. State*, 222 So. 3d 1088, 1092 (¶13) (Miss. Ct. App. 2017), *cert. denied*, 222 So. 3d 312 (Miss. 2017). "The purpose of an indictment is to satisfy the constitutional requirement that a 'defendant be informed of the nature and cause of the accusation.'" *Taylor v. State*, 94 So. 3d 298, 305 (¶15) (Miss. Ct. App. 2011) (quoting U.S. Const. amend VI; citing Miss. Const. art. 3, § 26). "Therefore, in order for an indictment to be sufficient, it must contain the essential elements of the crime charged." *Id.* (quotation marks omitted).

¶17. "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any

7

uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Tran v. State*, 962 So. 2d 1237, 1241 (¶17) (Miss. 2007) (quotation marks omitted). "However, simply tracking the language of a statute will not always be sufficient." *Id.* at 1242 (¶18). In some cases, depending on the nature of the offense and the language of the statute, it may be necessary for the indictment to set out additional facts or circumstances. *See id.* at (¶¶17-18).

¶18. Dartez did not challenge the sufficiency of her indictment in the trial court. "While it is true that 'challenges to the substantive sufficiency of an indictment may not be waived and consequently may be raised for the first time on appeal,' this does not include all challenges to an indictment." *Qasoon v. State*, 232 So. 3d 831, 834 (¶9) (Miss. Ct. App. 2017) (alteration omitted) (quoting *Ross v. State*, 954 So. 2d 968, 1015 (¶126) (Miss. 2007)). "Nonjurisdictional defects in the indictment may not be attacked for the first time on appeal absent a showing of cause and actual prejudice." *Id.* Rather, all such objections should be raised in a motion to quash the indictment filed prior to trial. Miss. Code Ann. § 99-7-23 (Rev. 2015). Dartez argues her indictment failed to allege an essential element of the offense—a jurisdictional defect, *see Qasoon*, 232 So. 3d at 834 (¶9)—because it failed to allege a specific negligent act.

¶19. In *Taylor*, this Court considered an indictment that, like the one in this case, charged the defendant with aggravated DUI but did not allege a specific negligent act. *Taylor*, 94 So. 3d at 304-07 (¶¶13, 20). The Court stated that it was unnecessary to decide whether an indictment for aggravated DUI "is or is not required to allege a specific basis for an

8

allegation of negligence." *Id.* at 307 (¶20). Instead, the Court held that the defendant had sufficient notice of the alleged negligence because she knew that the State would argue that she was driving on the wrong side of the road and speeding at the time of the wreck. *Id.*

¶20. We also addressed this issue in *Koch*, *supra*. As in *Taylor*, the Court held that the defendant received adequate notice of the negligence charged in the indictment. *Koch*, 222 So. 3d at 1093 (¶17). We noted that the accident report and other materials provided in discovery clearly alleged that the defendant failed to maintain a proper lane and ran off the road. *Id.* Moreover, defense counsel indicated throughout trial that he had prepared a defense to meet that allegation. *Id.*

¶21. We hold that Dartez's challenge to her indictment is procedurally barred because she failed to raise the issue in the circuit court. "The elements of [aggravated DUI] are (1) operating a vehicle while under the influence of an intoxicating liquor, or operating a vehicle with [.08 percent] or more by weight volume of alcohol in the person's blood; and (2) causing the death of another in a negligent manner." *Friston*, 243 So. 3d at 205 (¶34) (quoting *Andino v. State*, 125 So. 3d 700, 703 (¶8) (Miss. Ct. App. 2013)). The indictment in this case clearly alleged both of the essential elements of the offense. Therefore, the alleged defect is not "jurisdictional" in nature. *Qasoon*, 232 So. 3d at 834 (¶9). Dartez argues that the indictment should have described the facts and circumstances of the offense in greater detail. However, that argument does not call into question the jurisdiction of the circuit court. *Id.*

¶22. Procedural bar notwithstanding, this issue is also without merit. We recently held in

*Friston* that under the aggravated DUI statute "[t]he State is not required to prove a specific act of negligence, only that the death was caused in a negligent manner." *Friston*, 243 So. 3d at 205 (¶34). If the State is not required to prove a specific act of negligence at trial, it necessarily follows that such specificity is not required in the indictment. The indictment in this case stated the essential elements of the offense. Therefore, Dartez's argument is without merit.

## II. Jury Instructions

### A. Elements Instructions

¶23. In an extension of her first argument, Dartez next contends that the jury instructions should have identified a specific act of negligence on her part that caused Whitfield's death. She argues that the elements instructions were inadequate because, consistent with her indictment, they only required the jury to find that (1) she drove her car while under the influence of intoxicating liquor or with a blood-alcohol concentration of .08 percent or more and (2) "did . . . in a negligent manner cause [Whitfield's] death."

¶24. Dartez did not raise the issue at trial. Therefore, the issue is procedurally barred on appeal. *Friston*, 243 So. 3d at 204 (¶29).

¶25. The issue is also without merit. As stated above, "[t]he State is not required to prove a specific act of negligence, only that the death was caused in a negligent manner." *Id.* at 205 (¶34). "Thus, contrary to [Dartez's] claim, the jury was not required to be instructed on a specific negligent act . . . in order to convict [her] of the charge." *Id.* The State presented evidence that Dartez was negligent in maintaining her lane of travel, which caused her to lose

control of her vehicle and, thereby, caused Whitfield's death. The jury was properly instructed and returned a guilty verdict that was supported by the evidence at trial.

### B. Negligence Instruction

¶26. Dartez also argues that the trial court gave erroneous and confusing jury instructions regarding negligence. The primary jury instruction on negligence (S-3) read:

> The Court instructs the Jury that Negligence is the failure to use reasonable care. Reasonable care is that degree of care which a reasonably careful person would use under like or similar circumstances. Negligence may consist either in doing something that a reasonable careful person would not do under like or similar circumstance or in failing to do something that a reasonable careful person would do under like or similar circumstances. Simple negligence is sufficient for a conviction of Driving Under the Influence Causing Death or Disfigurement.

The trial court also gave the following instruction (S-4):

> The Court instructs the Jury that at all times a driver of a vehicle is required to maintain the easy and reasonable control of her vehicle.

Dartez argues that S-4 is a misstatement of the law and its inclusion confuses the instruction given in S-3 by presenting a different standard for negligence.

¶27. Dartez did not object to these instructions at trial. When Dartez's counsel was asked if he had any objection to S-4, he said, "I'm not sure—the only term I'm not sure about in there is where it says, it is required to maintain the easy and reasonable control of the vehicle. I'm not saying it's not right. I've just never heard it before." The State responded that the instruction had been approved in prior cases, citing *Lepine v. State*, 10 So. 3d 927 (Miss. Ct. App. 2009), and *Comby v. State*, 901 So. 2d 1282 (Miss. Ct. App. 2004). Dartez offered no further response. Because Dartez did not object to the instruction at trial, this issue is also

11

procedurally barred on appeal. *Lepine*, 10 So. 3d at 943-44 (¶48).

¶28.    Moreover, the issue is without merit. In *Lepine* and *Comby*, this Court held that the same or similar instructions were not erroneous. *Lepine*, 10 So. 3d at 944 (¶¶49-50); *Comby*, 901 So. 2d at 1288 (¶¶14-15). In *Lepine*, we emphasized that the court also gave the jury an instruction on negligence similar to instruction S-3 given in this case. *Lepine*, 10 So. 3d at 944 (¶50). We held that "the negligence instructions, when read as a whole, adequately instructed the jury on the standard of care applicable to [the defendant]." *Id.* We reach the same conclusion in this case.

### III.    Weight of the Evidence

¶29.    Dartez next argues that the evidence of negligence on her part did not outweigh the possibility that the wreck had some other cause. She acknowledges that the State's expert opined that the driver lost control of the vehicle as a result of oversteering, but she argues that there was no evidence of the vehicle's speed. She also argues that the evidence did not exclude possible mechanical problems or an independent cause such as oncoming traffic or an animal in the road. She asserts that "[i]t was just as likely that the wreck resulted, not from negligence, but some other accidental cause." She further argues her motion for a new trial should have been granted because the verdict was against the weight of the evidence.

¶30.    We review the trial judge's decision denying a new trial for an abuse of discretion. *Little v. State*, 233 So. 3d 288, 292 (¶21) (Miss. 2017). "We do not reweigh evidence," "assess the witnesses' credibility," or "resolve conflicts between evidence." *Id.* at 289 (¶1). "Those decisions belong solely to the jury." *Id.* On appeal, we "view the evidence in the

12

light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id.*

¶31. The verdict in this case is not contrary to the overwhelming weight of the evidence. Roe, the State's accident reconstruction expert, testified about his investigation and analysis of the wreck. He visited the site, photographed the scene, and marked significant points. He then used a device to take accurate, laser-guided measurements of the scene so that it could be accurately diagramed. Based on the evidence, Roe concluded that the driver of the car did not maintain the proper lane of travel. Roe further concluded that the driver overcorrected and lost control of the car as a result. The car then left the road, hit the ditch, and flipped. On cross-examination, Roe acknowledged that he could not say for certain why the driver failed to maintain her lane. He could only testify that she failed to do so. However, the State was not required to disprove every imaginable cause of the wreck. *See Taylor*, 94 So. 3d at 315 (¶53); *Dison v. State*, 61 So. 3d 975, 980 (¶17) (Miss. Ct. App. 2011). The State's burden was to prove beyond a reasonable doubt that Dartez's negligence was the cause of the wreck and Whitfield's death. There is no evidence to suggest that Dartez wrecked the car because of mechanical problems, oncoming traffic, or an animal in the road. The jury found that Dartez, driving with a blood-alcohol concentration nearly three times the legal limit, wrecked the car because she was negligent. There is no contrary evidence that overwhelms the jury's verdict. Therefore, the trial judge did not abuse her discretion by denying Dartez's motion for a new trial. *Little*, 233 So. 3d at 292 (¶21).

13

## IV. Sufficiency of the Evidence

¶32. Finally, Dartez argues that the evidence presented at trial was not sufficient to convict her under Count II of the indictment because the indictment referenced an inapplicable subsection of the DUI statute. At the time of Dartez's offense, Mississippi Code Annotated subsection 63-11-30(1)(c) made it unlawful to operate a motor vehicle while "under the influence of any drug or controlled substance." Subsection 63-11-30(1)(d) made it unlawful to operate a motor vehicle with a blood-alcohol concentration of .08 percent or more. Count II of Dartez's indictment clearly tracked the language of subsection (1)(d); however, the indictment mistakenly referenced subsection (1)(c).[1] Dartez argues that because her indictment cited subsection (1)(c), the State was bound by that subsection. She further argues that because there was no evidence that she was under the influence of controlled substances, she was entitled to an acquittal on Count II.

¶33. "The purpose of the indictment is to serve notice of the charges against the defendant and the facts underlying such charges." *Culp v. State*, 933 So. 2d 264, 277 (¶40) (Miss. 2005). "This does not require a citation to the specific statute, but merely enough facts so that the defendant is put on notice as to the statute that is alleged to have been violated." *Id.* When the defendant objects to her indictment for the first time on appeal, and her objection is that the indictment cited the wrong subsection of the relevant statute, "such incorrect

---

[1] The error in the indictment is likely attributable to amendments enacted during the 2014 legislative session that took effect shortly before Dartez's offense. Until October 1, 2014, subsection (1)(c) was the subsection applicable to the facts of this case, i.e., "per se DUI" based on the driver's blood-alcohol concentration. However, effective October 1, 2014, the relevant language was moved to subsection (1)(d). *See* 2014 Miss. Laws Ch. 493 (H.B. 412), § 1.

14

citation will be treated as surplusage unless it is found prejudicial to the defendant." *Id.* The indictment clearly charged Dartez with aggravated DUI based on her blood-alcohol concentration, which was still nearly three times the legal limit three hours after the fatal wreck. Dartez had clear notice of the nature of the charges against her. Therefore, the "incorrect citation" was mere "surplusage." *Id.* This issue is also without merit.

## CONCLUSION

¶34. There is no reversible error in Dartez's indictment or in the instructions given to the jury at trial. Furthermore, the jury's verdict finding Dartez guilty of aggravated DUI is not contrary to the overwhelming weight of the evidence. Accordingly, Dartez's conviction and sentence are **AFFIRMED**.

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**