# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-00658-COA

**BETH ANN WHITE**                                          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                          **APPELLEE**

DATE OF JUDGMENT:            05/15/2024
TRIAL JUDGE:            HON. WINSTON L. KIDD
COURT FROM WHICH APPEALED:            HINDS COUNTY CIRCUIT COURT,
FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:            KEVIN DALE CAMP
ATTORNEY FOR APPELLEE:            OFFICE OF THE ATTORNEY GENERAL
BY: BARBARA WAKELAND BYRD
DISTRICT ATTORNEY:            JODY EDWARD OWENS II
NATURE OF THE CASE:            CRIMINAL - FELONY
DISPOSITION:            AFFIRMED IN PART; REVERSED AND
RENDERED IN PART; REMANDED -
02/03/2026
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., WEDDLE AND LASSITTER ST. PÉ, JJ.**

**LASSITTER ST. PÉ, J., FOR THE COURT:**

¶1. Beth Ann White was convicted in Hinds County of four counts of aggravated driving under the influence (DUI) and one count of fourth-offense DUI. The circuit court sentenced White to serve twenty-five years for each aggravated DUI conviction and ten years for her fourth-offense DUI conviction, with all sentences to run consecutively. White appealed, arguing that the State's prosecution began after the statute of limitations on her offenses had expired, that the prosecution was barred by double jeopardy, and that the State committed prosecutorial misconduct.

¶2. After review, we hold that the statute of limitations had run on White's fourth-offense DUI charge. We find no error with the prosecution for aggravated DUI based on statute of limitations or double jeopardy grounds. Finally, White showed no prejudice as a result of the alleged prosecutorial misconduct. Accordingly, we affirm the judgment of conviction in part, reverse and render in part, and remand for consideration of resentencing.

**FACTS AND PROCEDURAL BACKGROUND**

¶3. On November 1, 2021, White was driving on Highway 18 in Hinds County when she failed to yield to another driver's right of way and crashed into a vehicle carrying four members of the Conaway family: Allison, the driver and mother of the passengers; Alex, who was six months old; Chelsey, who was four years old; and Chloe, who was seven years old. Allison was pronounced dead at the scene, and Alex later died from his injuries. Chelsey and Chloe survived but sustained traumatic brain and neck injuries that could cause future complications with their physical, emotional, and mental abilities.

¶4. Multiple witnesses testified at trial that White was driving erratically and dangerously in the moments before the fatal crash. When law enforcement arrived at the scene, officers noticed a strong odor of alcohol coming from White. White refused field sobriety testing, so an officer obtained a warrant for a blood draw, which revealed that White's blood-alcohol concentration (BAC) was 0.273% near the time of the crash. White's blood test also revealed that White had consumed hydrocodone, amitriptyline, and marijuana.

¶5. On March 25, 2022, a Hinds County grand jury indicted White on four counts of aggravated DUI. Each count alleged that White had been "operating a motor vehicle in

violation of Section 63-11-30(1)(d)(i) . . . while having a [BAC] of 0.273%." White proceeded to trial in November 2023; but the jury was unable to reach a verdict, and the circuit court declared a mistrial.

¶6. On December 8, 2023, a Hinds County grand jury returned a second indictment against White. The December 2023 indictment included four counts of aggravated DUI but this time alleged different subsections of the offense. Each count alleged that White drove her vehicle

> while under the influence of intoxicating liquor, and/or while having [a BAC of .08% or more], and/or was under the influence of any other substance that has impaired her ability to operate a motor vehicle, and/or was under the influence of any other substance that has impaired her ability to operate a motor vehicle, and/or was under the influence of any drug or controlled substance, the possession of which is unlawful under the Mississippi Controlled Substances law.

The December 2023 indictment also included a fifth count for fourth-offense DUI, which alleged that White had three or more previous DUI convictions.

¶7. Before trial began on the December 2023 indictment, the State moved to nolle prosequi[1] the March 2022 indictment and proceed only on the December 2023 indictment. The State's motion was granted. White then filed a motion to dismiss the December 2023 indictment, arguing the crimes alleged in the December 2023 indictment were subject to a two-year statute of limitations, which had expired on November 1, 2023. The circuit court denied White's motion, and the case proceeded to trial. A jury found White guilty of all five counts. The circuit court sentenced White to twenty-five years for each count of aggravated

---

[1] *Nolle Prosequi*, "To abandon (a suit or prosecution); to have (a case) dismissed by a nolle prosequi." Black's Law Dictionary (12th ed. 2024).

DUI and ten years for the count of fourth-offense DUI, each sentence to be served consecutively.

**ANALYSIS**

¶8.    White raises three issues on appeal. First, White argues the December 2023 indictment must be dismissed because it was returned beyond the two-year statute of limitations. Second, White claims even if the indictment was timely, the second prosecution is barred by double jeopardy because it stems from the same facts and circumstances as her first trial. Third, White argues the State committed prosecutorial misconduct when it mentioned plea negotiations to the circuit court during a hearing on White's motion to dismiss.

¶9.    We affirm White's convictions of the four counts of aggravated DUI, but we reverse and render her conviction and sentence for fourth-offense DUI.

### I.    Statute of Limitations Barring Prosecution

¶10.    We employ a de novo standard of review when considering the application of a statute of limitations because it raises a question of law. *Harper v. State*, 404 So. 3d 1275, 1278 (¶8) (Miss. Ct. App. 2025).

¶11.    Mississippi Code Annotated section 99-1-5 (Rev. 2020) provides the limitations period for criminal offenses and lists several specifically enumerated offenses with unlimited limitations or specific limitations periods. However, section 99-1-5(2) also provides, "A person shall not be prosecuted for any other offense not listed in this section unless the prosecution for the offense is commenced within two (2) years after the commission thereof." Mississippi Code Annotated section 99-1-7 (Rev. 2020) provides that "prosecution may be

4

commenced . . . by the issuance of a warrant, or by binding over or recognizing the offender to compel his appearance to answer the offense, as well as by indictment or affidavit."

¶12.    The December 2023 indictment charged White with aggravated DUI and fourth-offense DUI, which were not specifically enumerated in the limitations statute. *See id.* § 99-1-5. A prosecution for those offenses must begin within two years of the commission of the offense. *Id.*

¶13.    White argues the statute of limitations had run for all five charges by the time of the December 2023 indictment because more than two years had passed since the events giving rise to the indictment. White argues the nolle prosequi of the original, timely indictment doomed the State's prosecution because it brought the prosecution to an end. However, there are two problems with White's argument. One, we have concluded that prosecutions end only on a judgment following a verdict or order dismissing the case not on procedural grounds. *See State v. Parkman*, 906 So. 2d 888, 890 (¶11) (Miss. Ct. App. 2005) ("It seems to us that once a prosecution of a defendant has begun, it can terminate in one or two ways, by a judgment entered upon either a verdict of 'guilty' or upon a verdict of 'not guilty' or by an order dismissing the case either prior to conviction or following a conviction pursuant to a motion for a judgment notwithstanding the verdict."); *Goode v. Walmart Inc.*, 372 So. 3d 149, 163 (¶40) (Miss. Ct. App. 2023) ("The State's subsequent decision to abandon the pursuit of charges against Goode after he appealed it is immaterial; a nolle prosequi order is not an actual acquittal that would serve to bar another prosecution.").[2]

---

[2] In *Parkman*, this Court was asked to determine whether a grand jury's decision not to indict "terminated" the prosecution of the offense. After review, the Court adopted the

¶14.    Two, even accepting arguendo White's argument that the nolle prosequi terminated the prosecution, the second indictment was returned before the first indictment was nolle prossed. So even under White's legal theory, the prosecution had not terminated when the second indictment was returned. Ultimately, the nolle prosequi of the March 2022 indictment had no bearing on the timeliness of the December 2023 indictment.

¶15.    The question still remains whether the December 2023 indictment, which was returned more than two years after the DUIs, was timely and whether it raised new prosecutions. We first note that the December 2023 indictment added a charge of fourth-offense DUI that was not included in the original indictment. There is also no evidence in the record that White was charged with fourth-offense DUI at her arrest.

¶16.    A recent case from this Court is instructive. In *Harper*, the defendant was arrested and charged with three counts of second-degree murder after he evaded a safety checkpoint and crashed his vehicle, causing the deaths of three others. *Harper*, 404 So. 3d at 1275-77 (¶¶2-6). He was later indicted on three counts of culpable-negligence manslaughter. *Id.* at 1277 (¶6). More than two years after Harper's arrest, he was re-indicted and charged with three counts of culpable negligence manslaughter and one count of felony fleeing. *Id.* at (¶7).

¶17.    Harper appealed his conviction for felony fleeing, arguing that his prosecution on that charge did not start within two years of the offense and was barred. *Id.* We held that the prosecution for felony fleeing began after the statute of limitations had run, and we reversed

view from sister states that "the return of a no bill by a grand jury does not terminate the prosecution of the offense which was the subject of the no bill." *Parkman*, 906 So. 2d at 891 (¶13).

and rendered Harper's conviction of that count. *Id.* at 1279 (¶14). We held that the second indictment was the first time Harper had been charged with felony fleeing, noting that nothing in the record showed Harper had been charged with felony fleeing upon arrest. *Id.* at 1278-79 (¶¶10-14).

¶18.    Pursuant to *Harper*, we hold that the prosecution for fourth-offense DUI was not initiated until the return of the December 2023 indictment, which was more than two years after the incident giving rise to the charges. As such, prosecution for that charge is barred by the statute of limitations, and we reverse the judgment of conviction and sentence as to fourth-offense DUI and render its prosecution barred.[3]

¶19.    However, the prosecution of White's convictions of aggravated DUI was timely. The first indictment was returned well within the two-year statutory period for aggravated DUI, and we have already rejected the argument that the nolle prosequi of that indictment terminated the prosecution.

¶20.    White alternatively argues that the aggravated DUI charges in the second indictment cannot be saved by the first because the second indictment alleged a broader range of subsections of Mississippi Code Annotated section 63-11-30(1) (Rev. 2022). In White's first indictment, she was specifically charged with violating section 63-11-30(1)(d)(i) in the

---

[3] We recognize, as the State points out, that there were discussions from the outset that this offense was not White's first time driving under the influence, and the fourth-offense DUI clearly stems from "the conduct that formed the basis for all charges." However, the dissent in *Harper* similarly maintained that the facts underlying the conviction we ultimately reversed and rendered were "plainly articulated" in Harper's charging documents and "effectively put Harper on notice and compelled him to answer to *every* offense that he committed on the day in question." *Id.* at 1280 (¶¶17-18). Yet a majority of this Court rejected that interpretation, and we are bound to follow our precedent.

course of violating section 63-11-30(5), the aggravated DUI subsection.[4] The second

indictment charged her more broadly with violating section 63-11-30(1) and included

language from each subsection.[5] White argues that this expansion of the alleged behavior

essentially charged a new crime.

¶21.    However, the Supreme Court has held the subsections of section 63-11-30 "merely

set[] forth numerous methods of committing the same crime." *Kramm v. State*, 949 So. 2d

18, 23 (¶18) (Miss. 2007). In *Kramm*, the Supreme Court reversed and vacated a conviction

and sentence on a two-count indictment charging offenses under two subsections of section

---

[4] "It is unlawful for a person to drive or otherwise operate a vehicle within this state if the person . . . [h]as an alcohol concentration in the person's blood, based upon grams of alcohol per one hundred (100) milliliters of blood, or grams of alcohol per two hundred ten (210) liters of breath, as shown by a chemical analysis of the person's breath, blood or urine administered as authorized by this chapter, of [e]ight one-hundredths percent (.08%) or more for a person who is above the legal age to purchase alcoholic beverages under state law." Miss. Code Ann. § 63-11-30(1)(d)(i).

[5] Section 63-11-30(1) provides in part:

It is unlawful for a person to drive or otherwise operate a vehicle within this state if the person:
    (a) Is under the influence of intoxicating liquor;
    (b) Is under the influence of any other substance that has impaired the person's ability to operate a motor vehicle;
    (c) Is under the influence of any drug or controlled substance, the possession of which is unlawful under the Mississippi Controlled Substances Law; or
    (d) Has an alcohol concentration in the person's blood, based upon grams of alcohol per one hundred (100) milliliters of blood, or grams of alcohol per two hundred ten (210) liters of breath, as shown by a chemical analysis of the person's breath, blood or urine administered as authorized by this chapter, of:
            (i) Eight one-hundredths percent (.08%) or more for a person who is above the legal age to purchase alcoholic beverages under state law. . . .

8

63-11-30. *Id*. at (¶¶19-20). Kramm was convicted after evidence at his trial showed that he was driving while intoxicated: his BAC was .20%, and witnesses testified that he could not stand, was disoriented, and smelled of alcohol. *Id*. at 20-21 (¶¶8-15). Kramm's indictment included two counts under section 63-11-30(1): Count I charged him with violating section 63-11-30(1)(a), and Count II charged him with violating section 63-11-30(1)(c). *Id.* at 22 (¶16). The Supreme Court noted that it was permissible to proceed to prosecution under both subsections, as "the two subsections . . . merely provid[e] two different ways to prove a single violation." *Id.* at 23 (¶18) (citing *Young v. City of Brookhaven* 693 So. 2d 1355, 1357 (Miss. 1997)). But the Court would not allow one single course of conduct to support two separate convictions under the subsection because they were based on the same set of facts. *Id.* at (¶19).

¶22.    Both indictments charged White with violating section 63-11-30(1) in the course of committing four separate aggravated DUIs. The second indictment's inclusion of all subsections of that statute did not charge a new crime because the subsections merely provide different ways to prove a single violation.[6]

¶23.    Moreover, "[t]he purpose of the indictment is to serve notice of the charges against the defendant and the facts underlying such charges." *Dartez v. State*, 271 So. 3d 733, 742 (¶33) (Miss. Ct. App. 2018). "This does not require a citation to the specific statute, but merely enough facts so that the defendant is put on notice as to the statute that is alleged to

---

[6] While the fourth-offense DUI is listed in the same section as aggravated DUI, it was charged as a new and separate crime and was not used as a different way to prove a single violation of aggravated DUI.

have been violated." *Id.* Both of White's indictments charged her with aggravated DUI, meaning that she was alleged to have operated a motor vehicle in violation of section 63-11-30(1) and, while doing so, negligently caused the death or mutilated, disfigured, permanently disabled, or destroyed the body of another. *See* Miss. Code Ann. § 63-11-30(5). She had notice of the charges against her, and she has not alleged that the addition of the subsections was prejudicial to her defense.

¶24. In summary, the addition of Count V for fourth-offense DUI to White's 2023 indictment was a new and distinct prosecution that began beyond the two-year statutory limitations period for that crime. White's conviction on Count V is reversed and rendered. The four convictions of aggravated DUI are affirmed, as they were commenced within the two-year statutory period. The fact that the second indictment included language from each subsection of section 63-11-30(1) does not matter, as the subsections "merely provid[e]" multiple methods to prove one crime.

¶25. Although we affirm White's aggravated DUI convictions, this Court has reversed and remanded for consideration of resentencing where judgments of conviction have been affirmed in part and reversed in part. *See Harper*, 404 So. 3d at 1279 (¶15). This Court held in *O'Kelly v. State*, 267 So. 3d 282, 296-97 (¶57) (Miss. Ct. App. 2018):

> "[W]hen a defendant is convicted of more than one count of a multicount indictment, the [circuit] court is likely to fashion a sentencing package in which sentences on individual counts are interdependent." *Sallie v. State*, 237 So. 3d 749, 756-57 (¶29) (Miss. 2018) (quoting *United States v. Shue*, 825 F.2d 1111, 1114 (7th Cir. 1987)). "[B]ecause the sentences are interdependent, reversal of convictions underlying some, but not all, of the sentences renders the sentencing package ineffective in carrying out the [circuit] court's sentencing intent as to any one of the sentences on the affirmed convictions."

10

*Id.* at 757 (¶29) (quoting *Shue*, 825 F.2d at 1114). "'[A]fter an appellate court unwraps' the original sentencing package by removing 'one or more charges from its confines, . . . common sense dictates that the judge should be free to review the efficacy of what remains in light of the original plan,' and be allowed 'to reconstruct the sentencing architecture upon remand, within applicable constitutional and statutory limits, if that appears necessary in order to ensure that the punishment still fits both crime and criminal.'" *Id.* at 756 (¶28) (quoting *United States v. Pimienta-Redondo*, 874 F.2d 9 (1st Cir. 1989)).

We therefore also remand this case to the circuit court for consideration of resentencing on the four counts of aggravated DUI.

## II. Double Jeopardy

¶26. White argues that her second trial was barred by the Double Jeopardy Clauses of the United States[7] and Mississippi Constitutions[8] because the State presented the same facts and pursued the same offenses at both trials, and jeopardy attached at her first trial.

¶27. Generally, the Double Jeopardy Clauses of the United States and Mississippi Constitutions guarantee a defendant will not be tried twice for the same offense. If a trial court has granted a mistrial during prosecution, "a second trial is barred because of double jeopardy, unless taking into consideration all the circumstances there was a manifest necessity for the mistrial." *Jenkins v. State*, 759 So. 2d 1229, 1234 (¶18) (Miss. 2000). Although "there is no simple rule or formula defining the standard of manifest necessity," there are "obvious cases[,] . . . e.g., a hopelessly hung jury." *Id.* at 1235 (¶24).

¶28. At the end of White's first trial, the jury reported that they had reached an impasse, and the circuit court declared a mistrial. This is an "obvious case" of manifest necessity

---

[7] U.S. Const. amend. V.

[8] Miss. Const. art. 3, § 22.

11

where a second trial is not barred.

¶29. White further argues that the second prosecution was barred because the second indictment expanded the offenses for which she was charged. As discussed earlier, the second indictment's inclusion of all subsections of section 63-11-30(1) did not charge new crimes but instead presented different ways of pursuing the originally charged crime. White's second trial did not violate her right to be free from double jeopardy.

### III. Prosecutorial Misconduct

¶30. White argues that the State committed prosecutorial misconduct by referencing plea negotiations to the trial court and that this requires reversal. "The standard of review for prosecutorial misconduct has been clearly established by the Mississippi Supreme Court as follows: Where prosecutorial misconduct endangers the fairness of a trial and the impartial administration of justice, reversal must follow." *Anderson v. State*, 154 So. 3d 42, 57 (¶48) (Miss. Ct. App. 2014).

¶31. During the hearing on White's motion to dismiss, White's counsel objected when he thought that the State was going to mention plea negotiations, and the circuit court requested a sidebar conversation. The State mentioned that they were going to disclose an offer made by White's counsel during plea negotiations. The following occurred:

| Court: | Okay. I thought you put that in your — I thought that was somewhere. I read that. |
|---|---|
| State: | It was in my brief. |
| Court: | Okay. So I read it. |
| State: | I'll go away from that, your honor. I won't even address it. |

12

Court:          Okay.

Defense:       And we've asked that something in their motion be stricken from the file so that people can't see that because that's not permissible to talk about plea negotiations. The court is not supposed to know that and then also potential jurors are not supposed to know those kind of conversations.

Court:          Okay. Let's move on. Don't bring it up.

¶32. White alleges the State's comment about plea negotiations during a hearing on her motion to dismiss "endangered the impartial administration of justice" because the circuit court was made aware of "privileged communications." But she makes no effort to show how these comments before the circuit court actually endangered the fairness of her trial or tainted the circuit court's impartiality. When a party alleges prosecutorial misconduct, as White has done, counsel has a "duty . . . to make more than an assertion[.] [T]hey should state reasons for their propositions and cite authorities in their support." *See id.* at 57 n.8 (citing *Clark v. State*, 503 So. 2d 277, 280 (Miss. 1987)). After our review of the record, we find no grounds for reversal on this alleged error.

## CONCLUSION

¶33. White's prosecution for aggravated DUI began at least upon the March 2022 indictment on those charges. The December 2023 indictment for aggravated DUI was not a new prosecution but was a continuation of the prosecution that was already in progress. The inclusion of all subsections of section 63-11-30(1) did not change the crime charged.

¶34. However, the addition of the fourth-offense DUI in the December 2023 indictment was the first time prosecution on that charge began. Because the indictment was returned

13

after the two-year statute of limitations on that offense had passed, the State's prosecution was barred. We therefore reverse her conviction on that charge and render judgment barring prosecution of it.

¶35. We find no prejudice to White caused by the State's comments about plea negotiations. Therefore, we affirm White's convictions of the four counts of aggravated DUI. We remand to the circuit court for consideration of resentencing on these convictions in light of our reversal of White's conviction of fourth-offense DUI.

¶36. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REMANDED.**

**BARNES, C.J., CARLTON, P.J., LAWRENCE, McCARTY, EMFINGER AND WEDDLE, JJ., CONCUR. McDONALD, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. WILSON, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS AND McDONALD, JJ.**

**WILSON, P.J., CONCURRING IN PART AND DISSENTING IN PART:**

¶37. I concur that White's four convictions for aggravated DUI should be affirmed and that her conviction for fourth-offense DUI must be reversed and rendered because it is barred by the statute of limitations. I dissent in part only because it is unnecessary to "remand this case to the circuit court for consideration of resentencing on the four counts of aggravated DUI." *Ante* at ¶25.

¶38. In *Sallie v. State*, 237 So. 3d 749 (Miss. 2018), Sallie was convicted of aggravated assault and possession of a weapon by a felon. *Id.* at 750 (¶1). "The circuit court sentenced him to twenty years and ten years, respectively, with sentences to run concurrently. . . . The

14

circuit court also sentenced Sallie to an additional ten years pursuant to the firearm-enhancement statute . . . , with that sentence to run consecutively to the other sentences, for a total sentence of thirty years . . . ." *Id.* On appeal, the Mississippi Supreme Court reversed and rendered the firearm enhancement (because the defendant was not given adequate pretrial notice of the enhancement) and remanded the case for resentencing. *Id.* at 751 (¶2). On remand, "the circuit judge stated for the record that when he imposed Sallie's original sentence, he thought Sallie was going to have another 10-year sentence that would run consecutively to the two sentences running concurrently, effectively giving Sallie a thirty-year sentence . . . . The circuit judge then restructured Sallie's sentence"—ordering his remaining twenty-year and ten-year sentences to run consecutively—"to implement his original intention." *Id.* at 751, 757 (¶¶3, 30). The Supreme Court held that the circuit judge had authority to restructure Sallie's two remaining sentences to achieve his original sentencing intention. *Id.* at 757 (¶30). The Supreme Court reasoned:

> [N]umerous factors underlie a sentencing judge's ultimate sentencing plan, such as an accused's actual conduct during the criminal enterprise, as well as his life, health, habits and background. And in a multicount case, these factors are not necessarily altered when a defendant successfully appeals his conviction on one count. . . . [A]fter an appellate court unwraps the original sentencing package by removing one or more charges from its confines, common sense dictates that the judge should be free to review the efficacy of what remains in light of the original plan, and be allowed to reconstruct the sentencing architecture upon remand, within applicable constitutional and statutory limits, if that appears necessary in order to ensure that the punishment still fits both crime and criminal.
>
> . . . [T]he [trial] court ha[s] authority to resentence the defendant to effectuate its original sentencing intent after partial reversal of the defendant's convictions under a multicount indictment. . . . [W]hen a defendant is convicted of more than one count of a multicount indictment, the [trial] court

15

is likely to fashion a sentencing package in which sentences on individual counts are interdependent. And because the sentences are interdependent, reversal of convictions underlying some, but not all, of the sentences renders the sentencing package ineffective in carrying out the district court's sentencing intent as to any one of the sentences on the affirmed convictions.

*Id.* at 756-57 (¶¶28-29) (citations, quotation marks, brackets, and ellipses omitted).

¶39. In *O'Kelly v. State*, 267 So. 3d 282 (Miss. Ct. App. 2018), the circuit court had originally sentenced O'Kelly to *concurrent* terms of twenty years for second-degree murder and ten years for drug trafficking. *Id.* at 297 (¶58). On appeal, we reversed O'Kelly's murder conviction but affirmed his drug trafficking conviction. *Id.* at (¶59). We followed *Sallie* and remanded the case for resentencing, reasoning as follows:

> *Under the drug trafficking statute, the court could have imposed a longer sentence.* As our Supreme Court reasoned in *Sallie*, *it is possible that the circuit court's original sentence for drug trafficking was influenced by the murder sentence that the court imposed the same day*. O'Kelly's conviction and sentence for murder now stand reversed. The Supreme Court's opinion in *Sallie* makes clear that in this situation the proper course is to remand the case to the circuit court for resentencing on the remaining conviction for drug trafficking.

*Id.* at 297 (¶58) (emphasis added) (citations omitted).

¶40. In *Harper v. State*, 404 So. 3d 1275 (Miss. Ct. App. 2025), Harper was convicted of three counts of culpable negligence manslaughter and one count of felony fleeing. *Id.* at 1277 (¶7). For his manslaughter convictions, the court sentenced Harper to three *concurrent* terms of twenty years, with five years suspended and fifteen years to serve. *Id.* For his felony fleeing conviction, the court sentenced Harper to a *consecutive* term of five years in custody. *Id.* On appeal, we reversed Harper's felony fleeing conviction, and we remanded the case for resentencing pursuant to *Sallie* and *O'Kelly*. *Id.* at 1279-80 (¶15). We

16

recognized that the trial court had ordered the (reversed) sentence for felony fleeing to run *consecutively* to the remaining *concurrent* sentences, and the court should be permitted to "reconstruct" the remaining sentences to carry out the court's original "sentencing intent." *Id.* (quoting *O'Kelly*, 267 So. 3d at 296 (¶57) (quoting *Sallie*, 237 So. 3d at 756-57 (¶¶28-29))); *see also Smith v. State*, 422 So. 3d 14, 16 (¶¶1-2) (Miss. Ct. App. 2025) (remanding for resentencing after we affirmed ten convictions and ten *concurrent* forty-year sentences but reversed a conviction with a *consecutive* life sentence), *cert. denied*, 421 So. 3d 1261 (Miss. 2025).

¶41.    This case is materially different from *Sallie*, *O'Kelly*, and *Harper*.  In this case, the trial judge imposed the *maximum* sentence for *each* conviction—twenty-five years for each of the four aggravated DUI convictions and ten years for fourth-offense DUI[9]—*and* ordered *all* five sentences to run *consecutively*, for a total of 110 years.  Clearly, the trial judge concluded that White's conduct and criminal history, the deaths she caused, and the severe injuries she inflicted warranted the maximum sentence the law would allow.  Although White's conviction for fourth-offense DUI is barred by the statute of limitations, there is no logical reason that our reversal of that single conviction would cause the trial judge to restructure or alter the sentences he imposed for White's four aggravated DUI convictions.  The *maximum consecutive* sentences already imposed for the four remaining convictions (100 years total) are already as close as the trial judge can get to his original "sentencing intent" (110 years total).  Because there is nothing more the trial judge could do to achieve

_____

[9] *See* Miss. Code Ann. § 63-11-30(2)(d), (5) (Rev. 2022).

his original "sentencing intent," a remand for resentencing would serve no purpose in this case.[10] The law does not require us to remand a case for resentencing where it would serve no purpose. In similar scenarios, the Mississippi Supreme Court has simply "affirmed in part" and "reversed and rendered in part" *without remanding the case for resentencing*.[11] Accordingly, I dissent from the majority's decision to remand the case for further proceedings.

**WESTBROOKS AND McDONALD, JJ., JOIN THIS OPINION.**

---

[10] Certainly, there is no logical reason to think the trial judge would *reduce* White's four sentences for aggravated DUI upon being informed that Count V of the indictment was barred by the statute of limitations. Surely, White is no less culpable for the two deaths she caused and the two victims she severely injured just because we have held that an additional charge was brought a month beyond the applicable limitations period. It would be illogical for the trial judge to now alter the sentences he imposed on the four remaining counts. There is no reason to remand a case to see whether a trial judge will do something illogical.

[11] *See, e.g.*, *Henderson v. State*, 323 So. 3d 1020, 1023, 1029 (¶¶4, 31-32) (Miss. 2021) (The Supreme Court reversed and rendered defendant's conviction on Count I, affirmed his conviction and statutory maximum sentence on Count II, and did *not* remand for resentencing.); *Hampton v. State*, 309 So. 3d 1055, 1060, 1067 (¶¶19, 69-70) (Miss. 2021) (The Supreme Court reversed and rendered defendant's conviction and sentence for one count of felony child abuse, affirmed her conviction and identical sentence for a second count of felony child abuse, and did *not* remand for resentencing.); *Barton v. State*, 303 So. 3d 698, 700-01, 704 (¶¶12, 22-23) (Miss. 2020) (The Supreme Court reversed and rendered defendant's conviction and statutory maximum sentence on Count I, affirmed his conviction and statutory maximum sentence on Count II, and did *not* remand for resentencing.).